J. F. SLAUGHTER, Executor, *et al.*, *v.* MARY L. GARLAND.

1. PERSONAL PROPERTY: STATUTE REGULATING DESCENT AND DISTRIBUTION OF PERSONAL PROPERTY, SITUATED IN THIS STATE, ACCORDING TO THE LAWS OF THIS STATE, APPLIES ALONE TO THE ESTATES OF INTESTATES.—The statute of this State, which provides that all personal property situated in this State shall descend and be distributed according to the laws of this State regulating the descent and distribution of such property, regardless of marital rights which may have accrued in other States, and notwithstanding the domicile of the deceased and of the parties interested may have been in another State, applies alone to estates of *intestates.*

2. EFFECT OF RENUNCIATION OF WIDOW, WHEN HUSBAND DOMICILED IN ANOTHER STATE.—The renunciation of the provisions of a will by the widow does not have the effect to render the estate intestate, so that she can take that portion of the personal estate situated here, to which she is entitled by the laws of this State, when the domicile of her husband was in another State. Her right to the descent and distribution of the personal property is governed by the law of the domicile.

3. RENUNCIATION OF WIDOW, EFFECT OF, IN FORUM OF DOMICILE, AND "LOCI REI SITÆ."—The renunciation of the widow in the proper court of the testator's domicile would have the effect to entitle her to whatever rights she might have by the laws of that domicile, and to affect property of the estate in another tribunal through the ancillary administration. It would not have the effect of a legal renunciation in the forum of the ancillary administration.

APPEAL from the Probate Court of Hinds county.    Hon. John W. Robb, judge.

On the 9th of January, 1863, appellee filed her petition in the Probate Court of Hinds county, in which she asked that her legal share of the estate of her husband might be allotted to her according to the laws of this State.    The petition represented that appellee was a resident of the city of Lynchburg, Virginia, was the widow of Samuel Garland, senior, deceased, who was, at the time of his death, a citizen of said city and State.    That

he died in November, 1861, without leaving any child or descendant of any child, him surviving, and leaving a last will and testament, which was dated December 7, 1857. That said Samuel Garland, at the time of his death, was the owner of a large estate, real and personal, in the States of Virginia and Mississippi, all of which was devised and bequeathed in said will, and provision made therein for appellee. The will was admitted to probate in the Hustings Court of the city of · Lynchburg, on the 2d day of December, 1861, and an authenticated copy thereof admitted to probate in the Probate Court of Hinds county, on the 6th of November, 1862. Appellee, on the 6th of March, 1862, filed, in said Hustings Court, her renunciation of the provisions of said will, and her written election to take her legal share in lieu thereof; and on the 5th of January, 1863, duly authenticated copies of these, and "also an original renunciation and election in substance like thereto," were filed in the Probate Court of Hinds county.

Appellant demurred to this petition, and assigned the following causes:

1. Petition showed that the husband was a non-resident at the time of his death.

2. That under her renunciation and election, made in Virginia, she was bound to take such legal share, according to the laws of Virginia, and is not entitled to receive the same according to the laws of Mississippi.

3. The petition showed that more than six months elapsed from the probate of the will in Virginia, before the renunciation and election were filed in the Probate Court of Hinds county.

4. The renunciation and election filed in said Probate Court are not authorized by law, and are void.

This demurrer was overruled, and leave given to appellant to answer over. Afterwards appellee, under leave of the court, dismissed so much of her petition as related to the real estate.

The Probate Court, on a final hearing of the cause, and after appellant had answered, decreed that appellee should be

allotted that portion of the personal estate to which she was entitled, according to the laws of Mississippi; and from this decree an appeal was prosecuted.

*W. P. Harris*, for appellant.

If the widow takes under the laws of this State, she is entitled to one-half of the personal estate absolutely; but if she claims under the laws of Virginia, she will take one-third of the slaves for her life only, and one-third of the remaining personal property absolutely. See Rev. Code of Va., volume 1, page 381. The code of 1849 has not altered the law.

The case of *Garland* v. *Rowan*, 2 S. and M., page 617, and subsequent cases in this court, declare that the Virginia law shall prevail; and the point that remains to be considered is, does the Rev. Code of 1857 alter the law as it stood before its adoption ?

It is manifest from the language of article 110, page 452, Rev. Code, that it deals with the second branch of the subject, and changes the former law as to *intestacy* only. There is no evidence in any part of the Code of a design to alter the rule as to *wills*. It simply declares that when a party dies *intestate*, the estate situated here shall descend and be distributed according to the laws of this State, and not in conformity with any foreign law. The last clause of article 110 was only added lest it might be supposed the widow was excluded, as her share was considered in the nature of a dower, and as she does not take by descent or distribution. See *Carllant* v. *Bernard*, 7 S. and M. The words, "shall *descend* and be *distributed* according to the laws *regulating* the *descent* and *distribution*"—"*heirs* or persons *entitled* to *distribution*" are applicable to *intestacy* only.

To place the widow, renouncing the will of her husband under a foreign law, on the same footing with the widow of an intestate, would be violating the spirit of our laws, which discriminate against the widow renouncing her husband's will. The widow of an intestate takes her share of her husband's estate without being required to bring into the account her *separate estate*, whereas exactly the reverse is the case with one renounc-

Slaughter et al. *v.* Garland.

ing the provisions of a will. Code 337. She is expressly pro-
hibited from dissenting from her husband's will when her
separate estate is of equal value with her share in her husband's
estate.

A foreign will cannot be renounced in our courts at all.
The evidence of renunciation under the foreign law, or law of
the domicil, may be produced here, but in giving effect to the
renunciation we do so, not because we give effect to *our* law,
but to the *foreign law* which allows it. The effect of such
renunciation, and the terms on which it is to be allowed, are
determined by the law of the testator's domicile.

Our Code did not design to interfere with foreign wills, nor to
alter the grounds on which they stood : and when the widow
claims property here against the provisions of such will, she
claims under the foreign law, under which she was allowed to
renounce, and we deal with her renunciation as we deal with
the will which it qualifies. Unquestionably the right to oppose
a will and defeat it, is a qualification of the *testamentary power*,
and belongs to the law which confers the power to make the
will ; and so the extent to which the will may be opposed must
be determined by the law of the testator's domicile. Story on
Conf. Laws, 348, section 474 ; Ib. 402, section 479c.

The widow of an intestate comes here by virtue of the law of
*this state*, she stands, therefore, upon *our statute ;* but the widow
who comes here because a foreign law has allowed her to re-
nounce her husband's will, comes here by the force of that law,
and the courtesy of nations. She has not, nor can she, renounce
under our law. Her renunciation, its validity and effect on the
will, are to be considered with reference to the foreign law under
which it was made. She stands in our courts *on the foreign
law*, and must abide by it.

*T. J.* and *F. Wharton* for appellant, cited the following
authorities, viz. : Rev. Code, article 110, section 14, page 452 ;
*Roberts* v. *Roberts*, 34 Miss., page 322 ; Rev. Code, article 111,
page 453, and articles 162, 163, page 467, and articles 168, 169,
page 468, and article 42, page 433, and article 49, page 435 ;
Hutch. Code, section 50 of Act of 26th November, 1821, page

623, and section 1, 2, page 621, and section 45, 46, page 620; Code of 1849, section 12, page 522, and section 10, paragraph 5, page 124; *Garland* v. *Rowan*, 2 S. & M. 617; *Mahorne* v. *Hove*, 9 S. & M. 247; *Wells* v. *Wells*, 35 Miss. 638; *Bailey* v. *Osborne Adnir, etc.*, 33 Miss. 128; *Turner et al.* v. *Turner*, 30 Miss. 427; *Nash* v. *Young*, 31 Miss. 134; *Coleman et al.* v. *Brooke Adnir*, 37 Miss. 71; *White* v. *Stephenson et al.* 38 Miss. 113; *Morgan Adnir* v. *Morgan*, 36 Miss. 348: *Givin* v. *McCarroll*, 1 S. & M. 351; *Prentiss* v. *Miller*, 1 S. & M. 521; *Enas* v. *Smith*, 7 S. & M. 85; *McComb* v. *Ellett*, 8 S. & M. 505; *Overstreet* v. *Davis*, 24 Miss. 393: *Ridley* v. *Ridley*, 24 Miss. 648; *Steen* v. *Steen*, 25 Miss. 513; *Work* v. *Harper*, 24 Miss. 517.

*W.* and *J. R. Yerger*, for appellee.

By the common law, as declared by this court in the case of *Rowan* v. *Garland*, 2 S. & M. 617, the personal estate of decedent is to be distributed according to the laws of the country of his domicile.   Article 110 of Revised Code, page 452, changes the rule of common law, as declared in the above case.   If we transpose the words providing for the rights of the widow, and connect them with that portion of the sentence which speaks of the domicile, it will read thus: " Notwithstanding the domicile of the deceased may have been in another State, the widow of such deceased person shall take her share in the personal estate according to the laws of this State."   The widow is entitled to a fixed portion of the real and personal estate of the husband, whether he dies testate or intestate.   Article 163, page 467, Revised Code.

Articles 110 and 163 are to be construed together, because they relate to the same subject-matter.   The restrictions on the power of the husband, contained in article 163, are as applicable to parties domiciled abroad as to those domiciled in Mississippi. A will of fixed or immovable property is generally governed by the *lex loci rei sistæ*.    1 Jarman on Wills, page 1, and cases cited in note.   The same rule now applies to personality in this State.

The effect of a renunciation of the widow is the same as if the

husband had died intestate, because, upon renouncing, she claims and takes under the law and its provisions, and not under the will.

HANDY, C. J., delivered the opinion of the court.

On the 9th January, 1863, the appellee filed her petition in the Probate Court, stating that she was a resident of the State of Virginia, and the widow of Samuel Garland, senior, deceased, who died in November, 1861, a resident of that State, leaving no child or descendant of any child surviving him, and leaving a last will and testament dated 7th December, 1857, and seized and possessed of a large estate, real and personal, both in Virginia and in this State; all of which was disposed of in said will, and provision was made therein for the widow. This will was admitted to probate in Virginia on the 2d December, 1861, and the widow filed her renunciation of its provisions in her favor, in the same court where it was admitted to probate, with her election to take her dower and legal share of the estate, on the 6th March, 1862, an authenticated copy of which renunciation and election was filed in the Probate Court of Hinds county, and an authenticated copy of the will was admitted to probate in that county on the 6th November, 1862. The executors residing in Virginia did not qualify in Mississippi, and letters of administration with the will annexed were granted by the Probate Court of Hinds county in this State, to Burr Garland. The petition further states that the testator left an estate in Virginia largely more than sufficient to pay his debts, and that he owed no debts in this State of the least consequence. The prayer was for her dower of one-half the lands, and for one-half of the personalty, under the laws of this State, or for general relief.

The executor filed a demurrer to this petition on sundry grounds, which being overruled, he filed his answer admitting the material facts stated in the petition, but denying the right of the petitioner to demand her legal portion of the estate according to the statutes of this State. The answer was also made a cross-petition, and stated that in January, 1863, the appellee filed her petition *ex parte* in the Probate Court of Hinds county for

the allotment to her of one year's provision, and for such property of the testator's personal estate as was exempt from execution; and that the appellee was never a citizen of this State, and that such allotment was ordered to be made by the Court, without notice to the executor. The cross-petition also set up other grounds of objection to the appellee's petition, not necessary to be mentioned. To this cross-petition the appellee filed a demurrer which was sustained. The original petition was dismissed as to the real estate, and, on the final hearing, a decree was rendered in favor of the petitioner for one-half of the personal estate of the testator in this State, except a few specified slaves; and from that decree this appeal was taken.

The first error assigned is the overruling of the appellant's demurrer to the original petition.

The question presented under this, and also under the third assignment, is whether the widow was entitled to her dower in the real estate, and her share of the personal estate of her husband, according to the statutes of this State, upon the state of facts appearing in the record; and this depends mainly upon the construction to be put upon article 110, Rev. Code, 452, in the following words: "All personal property situated in this State, shall descend and be distributed according to the laws of this State, regulating the descent and distribution of such property, regardless of all marital rights which may have accrued in other States, and notwithstanding the domicile of the deceased may have been in another State, and whether the heirs or persons entitled to distribution be in this State or not; and the widow of such deceased person shall take her share in the personal estate, according to the laws of this State."

The first question that arises under the act is, whether any of its provisions are applicable when the deceased dies intestate; or whether they all have not reference to cases of intestacy alone.

The subject-matter upon which the provisions are made is stated to be "descents and distributions" of deceased persons' estates, which words are appropriate to cases of intestacy, but not to those of testacy. It is upon the subject of "descents and distributions" that the act professes to make provisions. In the

first clause of it, the words employed appear to indicate the same intention. The terms are, " All personal property situated in this State shall *descend* and *be distributed* according to the laws of this State regulating the *descent* and *distribution* of such property, etc., notwithstanding the domicile of the deceased may have been in another State, and whether the *heirs* or *persons entitled to distribution* be in this State or not." It appears evident that the material words in this clause have reference to cases of intestacy alone, and could not, with any legal propriety, be applied to cases of testacy. If this clause stood alone, a doubt could scarcely be raised that its provisions were applicable only to the estates of persons dying intestate. Does the following clause hold a different idea ? It is—" and the widow of *such deceased person* shall take her share in the personal estate, according to the laws of this State." This is not a distinct and independent provision for the share of widows generally, but refers expressly to a class of widows; that is, the widows of " *such deceased persons* " as were embraced in the clause immediately preceding, which we have seen are persons dying intestate. The language of the act appears, therefore, plainly to contemplate cases of intestacy only.

It is not for us to inquire into the reasons which induced this legislation, the language of its provisions being clear. But it is plain that the Legislature thought fit and intended to change the rule then existing as to the descent and distribution of personal property in this State, belonging to persons residing in other States, and to establish the *lex rei sitœ*, instead of the *lex domicilii* previously existing, as the rule of descent and distribution of such property. But they have confined it, by well defined legal terms, to cases of intestacy ; and having ascertained that such was the scope of the provision, we have no power to extend it to other cases not within the language employed.

But it is insisted that the widow had the right to renounce the will under the law of Virginia, and that she did renounce ; and hence, as to her, that the estate must be considered as intestate, and she entitled to distribution as if the husband had died intestate.

It is a sufficient answer to this to say, that this would not be such a case of intestacy as is contemplated by the statute. For certain purposes, the renunciation of a will by a widow may have the same effect, as to her rights, as if the husband had died intestate; for instance, she would be entitled to her portion under the law, as in cases of intestacy. But with no propriety could it be said that this rendered the estate intestate, and especially in view of the provisions of this statute. Its object was to establish a general rule for the distribution of property in this State, belonging to persons dying intestate—a rule affecting the entire estate and the interests of all the parties entitled to it. Its language and scope appear to contemplate cases of entire intestacy—that is, a total failure to make a valid will, or a failure to dispose of certain property by it—and a full distribution of the estate to and among all the parties entitled; and there is nothing in it which would embrace a *quasi* intestacy as to the rights of the widow, created by her renunciation of a valid will.

But the right of renunciation is available only in the proper tribunal of the testator's domicile. It is an incident to the jurisdiction of the tribunal which has the exclusive power to admit the will to probate, and proceeds from the jurisdiction over the matter of probate. Otherwise there might be a renunciation of the will in a foreign State, while it would be in full force in the State of the domicile; which would be absurd. The tribunal having jurisdiction, both of the probate and of the incident of revocation, is manifestly the proper court of the domicile of the testator.

There is no warrant in our laws for renouncing a foreign will here by exhibiting in the Probate Court here a copy of the renunciation made in the proper court of the testator's domicile. Such a proceeding could only have the effect of evidence that the renunciation had been made in the proper tribunal, and to entitle the party here to whatever rights she might have by the laws of that domicile, and to affect property of the estate here, through the ancillary administration here. It could not have the effect of a legal renunciation made here, because it is unauthor-

ized by our laws, and because the act of renunciation pertains to the *forum* of the domicil.

But if it be conceded that the renunciation in Virginia had the effect to create an intestacy as to the widow, so as to entitle her to her legal share of the estate there, her rights would be regulated by the law of that State, where alone the renunciation was made in law: and she would not be entitled to distribution under the laws of this State; because there is not, and cannot be, any valid renunciation here having a different effect upon the rights of the widow from that of the law of Virginia. And this is fatal to the claim set up in her petition to a share of the estate according to the laws of this State.

The decree of the Probate Court is therefore reversed, and the cause remanded to that court, to be proceeded with according to the views herein stated.