In the Matter of the ESTATE of William M. MILLER, Deceased.

Donna Jane FLINN, Ancillary Administratrix with Will Annexed, Appellant,

v.

J. Patrick HAND, Administrator, Estate of Leona Miller, Deceased, Appellee.

No. 4439.

Supreme Court of Wyoming.

Oct. 9, 1975.

Rehearing Denied Nov. 17, 1975.

**McCLINTOCK, Justice.**

Two questions are presented by this appeal: First, whether the statutory option given a surviving spouse to elect against the provisions of a will and take a designated portion of the estate of the decedent may be exercised by an administrator or executor of the estate of a surviving widow who died prior to the time that the will was offered for probate in this state; second, and if the answer to the first question is in the negative, whether an election against a will regularly filed by the surviving spouse in probate proceedings in the domiciliary state of the testator and spouse may be considered an effective election against the will in this jurisdiction. The decision of the district court of Converse County, Wyoming sustained an election filed by the Wyoming administrator of the surviving spouse's estate in the proceedings then pending in that court in which election there was included a certified copy of the election which had been previously filed by her in the Tennessee probate court where the will was first probated. It is not clear on just which basis the election was sustained, but appellees in this court seek to sustain the election on both grounds. We find the decision results from an erroneous application of Wyoming law and reverse the order of the district court.

The facts are simple and undisputed. William M. Miller,[1] the decedent, had been married to Julia Sharp Miller who had predeceased him, leaving one daughter as the issue of that marriage. The daughter likewise died before her father but was survived by three daughters. On March 24, 1936, Miller, at that time unmarried, executed a will whereby the bulk of his estate was left to these three grandchildren. He also provided therein that in the event he remarried his surviving spouse should receive $1,000.

Miller and Leona were married September 22, 1936. Miller died May 19, 1942

Robert P. Schuster, Casper, for appellant.

J. Patrick Hand of Hand, Hand & Hand, P. C., Douglas, for appellee.

Before McCLINTOCK, RAPER and ROSE, JJ.

1. All parties and persons will be referred to by name or by the title of the office held by them.

and the will of March 24, 1936 was admitted to probate as his last will and testament in the county court of Anderson County, Tennessee. His Tennessee estate was thereafter administered in that court. On June 11, 1942 Leona elected against the will in conformity with Tennessee law and eventually received a portion of the Tennessee estate as fixed by that law. At the time of his death Miller was the owner of a reserved one-half mineral interest in certain lands in Wyoming, which interest is conceded by all parties to constitute real property within this state. The Tennessee proceedings are properly silent as to this interest and no attempt was made to probate his will in this state until December 14, 1973, at which time proceedings in keeping with our Uniform Foreign Probate Act, § 2–67, et seq., W.S.1957 were instituted. In the meantime and on December 6, 1963 Leona died, survived by a child of a previous marriage. No children were born to her marriage with Miller. On January 28, 1974, prior to the admission of the foreign will to probate, J. Patrick Hand, as administrator of the estate of Leona Miller, deceased, under appointment by the district court of Converse County, Wyoming, filed an instrument entitled "Election of Surviving Spouse" under the terms of which instrument, and in behalf of one Ruby Zimmerman, heir of Leona Miller, and Burton-Hawks, Inc. as successor in interest, he claimed a one-half interest in the estate. The will was admitted to probate, and Mrs. Flinn appointed administratrix with the will annexed on February 7, 1974. Appropriate letters were issued to Mrs. Flinn on the next day. A second election against the will, again claiming a half interest in the estate, was filed by Mr. Hand on February 20, 1974, stating that it was made in behalf of Leona Miller, now deceased, her heirs and their successor Burton-Hawks, Inc. It was further asserted in this instrument that William Miller had died intestate as to this mineral interest. Attached

to the election and incorporated as a part thereof was a certified copy of the election which Leona Miller had filed in the Tennessee probate proceedings on June 11, 1942. By order entered April 22, 1974 the Converse County district court sustained the election against the will, without prejudice to any claims Leona or her successors in interest might have to intestate property. This appeal followed.

Our election statute as amended in 1919 remained fixed in form until enactment of Ch. 204, S.L. of Wyoming 1957. In view of the death of Miller during this period and the delay in presentation of the will for probate in Wyoming, it is necessary to discuss the changes in the law which were effected in 1957. By the first enactment, Ch. 21, S.L. of Wyoming 1919, it was provided in pertinent part that a testator having children or descendants of children by a former marriage and no such descendants of the marriage in effect at the time of his death, could by will deprive his surviving widow of not to exceed one-fourth of his estate, real and personal. If he deprived the widow of more than that,

> " * * * it shall be optional with the surviving spouse, in the manner and within the time mentioned in the first proviso in this section, and not otherwise, to elect to take one-fourth of the estate, real and personal, of the deceased spouse in lieu of the provision for such surviving spouse as made in the will of the deceased spouse. In default of such election the will shall govern in the distribution of the estate." [2]

The manner and form of exercising the election were the same as already provided for the spouse of a marriage resulting in children, namely,

> " * * * Such option shall be signified by an instrument in writing, signed by the surviving spouse and acknowledged before some officer authorized by the laws of this State to take acknowledg-

---

2. The amendments by Ch. 58, S.L. of Wyoming 1971, and Ch. 213, S.L. of Wyoming 1973, do not appear to change the statute in any manner pertinent to this suit.

ments, and filed in the office of the Clerk of the District Court in which such will is admitted to probate *within six (6) months after the probate thereof."* (Emphasis supplied.)

This statute, in effect at the time of Miller's death in 1942, contained no provision for exercise of the option by anyone other than the surviving spouse. Following the decision of this court in *In re Hartt's Estate,* 75 Wyo. 305, 295 P.2d 985 (1956), in which case it was held that the time limitation of the statute for filing the election was a mandatory limitation, regardless of any equities that might exist in favor of the surviving spouse except possibly fraud, the statute was amended by Ch. 204, S.L. of Wyoming 1957 to direct the probate judge to give notice of and explain the right of election to the surviving spouse, or if he or she was deceased or incompetent, to the personal representative or guardian of the estate of a surviving spouse who had died or become incompetent. The statute was further amended in 1971 and again in 1973, mainly with respect to time requirements, and, as the law existed at the time the Miller will was admitted to probate in Converse County, provided in pertinent part that,

"* * * if the surviving spouse shall die or become incompetent within three months after such will is admitted to probate *or before the probate judge has advised him of the right and consequence of election as herein required,* then the same must be explained to the personal representative or guardian of the estate of the deceased or incompetent or surviving spouse who shall have the same right of election as the surviving spouse would have had if living or competent, and shall make such election in writing within 30 days after receiving the explanation and consequence of such election from the probate judge." [3] (Emphasis supplied.)

3. Under provisions of the statute a surviving spouse who was the mother or father of living children born to the marriage with the

It is thus apparent that an important change was effected by the 1957 amendment. Under the former statute the optional right of election expired six months after the will was admitted to probate, without notice and without provision for exercise of the option by the surviving spouse's personal representatives should he or she die before exercising the option. By the later statute, the option does not expire unless and until specific notice and explanation are given by the probate judge, and if the surviving spouse dies before the notice and explanation are given, then it must be given to the personal representative of the estate. Probate of the will and giving this notice are conditions to the running of the limitations upon the right to exercise such option.

■ The administrator of Mrs. Miller's estate concedes that almost every authority holds that the widow's right to an election against the will is personal to her and is extinguished upon her death, absent statutory modification or extension, but argues that by the 1957 amendment of the statute the legislature has extended the widow's right of election, which extension of rights has been carried into the later amendments. We agree that since 1957 the option does not necessarily die with the widow but is extended to her personal representative—which we construe to mean her administrator in case of intestacy and her executor if she died testate—and that this right of election does not terminate until notice is given either to the surviving widow in her lifetime or to such personal representative after her death. It is therefore necessary to determine which version of the law shall be applied in this situation where some 15 years after the death of the testator the law was changed to extend the right of election.

■ The administrator cites *In re Enyart's Estate,* 100 Neb. 337, 160 N.W.

deceased spouse could elect to take one-half the estate of the decedent. The manner of election is the same in either case.

120, 124 (1916) to the effect that there is no vested interest in a statute and a change in the manner of disposition of estates may be made by the legislature at any time, but he has overlooked the further statement in the decision that "[t]he law at the time of death determines the right and manner of disposition, and not the former law." 160 N.W. at 124. Assuming that no rights have vested at the time the law is changed there could be no objection to an extension of right of election to others than the widow, but upon the death of Mr. Miller the title to the mineral interest, an interest in real property in Wyoming, vested in his devisees. In *Cook v. Elmore*, 25 Wyo. 393, 402, 171 P. 261, 263 (1918) this court said:

"\* \* \* Upon the death of Mike Elmore whatever title, if any, which he had to the land in controversy, either passed by his will to some devisee or devisees, or, if not devised, then it descended to his heirs, subject to the payment of his debts."

This statement of the law has been reiterated a number of times. See *Park County v. Blackburn*, Wyo., 394 P.2d 793, 794 (1964); *Augustine v. Gibson*, Wyo., 429 P.2d 314, 316 (1967). In addition to the availability of the property for debts, often referred to as the lien of the probate, we must of course consider the right of the surviving spouse at least partially to defeat the devisees' title by making the election. But this is in the nature of a future defeasance and does not delay the vesting of the title. While we consider this reasonably self-evident under the provisions of our election statute, we think that the following excerpts from an early opinion of the Supreme Court of Maryland, *Collins v. Carman*, 5 Md. 503, 531–532 (1854), are appropriate:

"\* \* \* The law clearly gives to the husband the power by his will to bar, or extinguish the common law rights of his widow, unless she thinks proper to quit all claim to the property conferred upon her by the will. And to effect the husband's object the wife need not declare her *assent*; if however, she desires to defeat it, she must manifest her intention to do so, by an express *dissent*. And such dissent is an act, which by the very terms of the law, must precede her becoming entitled to or vested with, those rights which she might have claimed but for the will; for the act declares, she shall be barred of those rights, if she does not renounce and quit claim to the devises and bequests, and make her election to take in lieu thereof her dower, or legal share of the estate. It is this election which vests in her the right of dower or legal share, in lieu of what the will had given. (See 2 *Devereux's Eq. Rep.*, 344.) \* \* \* If we are correct in our view of what are now the widow's vested rights, upon the decease of her husband, a failure to renounce does not work a forfeiting of any vested rights; but more properly speaking, that failure simply prevents her from acquiring the same rights she would have been entitled to had her husband died intestate, or made no provision for her in the will, or had expressly declared that such provisions should not bar her claim to dower or legal share of the estate. To acquire such rights in opposition to the will, the law makes the renunciation a necessary act. The non-performance of this act, is therefore, not a forfeiture of existing rights, but prevents the acquisition of those rights, which, by its performance, might be secured."

■■ To hold that in the interim after the title has vested subject only to the limited personal right of the surviving widow—which may or may not be exercised—to elect against the will, the legislature may grant further rights to successors in interest of a surviving but by now deceased spouse would in our judgment be an unwarranted interference with property rights and we cannot construe the amendment of the statute as intending to affect such vested titles. It therefore follows

that the personal right of election resting in Mrs. Miller died with her and could not be exercised by the administrator or other representative of her estate.

■ Mrs. Miller's administrator cites the well-established rule that one who makes an election against the will in the domiciliary estate is thereafter estopped to take a position elsewhere that is inconsistent with such election. We do not think that it necessarily follows, as argued by counsel, that an election made in the domicile is effective for all purposes in the ancillary estate. No authority is cited which says that because the widow is so estopped the courts of the ancillary state must ignore specific provisions of its law. *Colvin v. Hutchison,* 338 Mo. 576, 92 S.W.2d 667, 669–670, 105 A.L.R. 266 (1936), cited by counsel, is valuable in its discussion of the relations between the domiciliary and ancillary states in exercising jurisdiction over the will and property within the borders of either state, the obligation imposed upon the spouse, and the dominant role of the law of the state where the property is located:

" * * * The will offers her certain testamentary benefits; each state offers her instead certain estates in the land located therein; but the law of each state governs the kind of estate she may have there if she renounces the will. * * * If she renounces the will, in order to make the choice between different estates any state offers for renunciation, *she must do what that state requires* or get only what she would receive there upon her failure to make such a choice in the required way." (Emphasis supplied.)

The court then points out that a renunciation in one state is one in toto and "[a]t least, in the absence of a statute with specific requirements, no filing of the renunciation elsewhere is necessary."

■ Wyoming has directed the spouse to show his or her exercise of the option to take against the will by filing in the probate court having jurisdiction of the estate a written and acknowledged election to that effect. The statute does not say, as perhaps it might have, that an election filed in the state of domiciliary jurisdiction should be recognized as the equivalent of filing in this state. Mrs. Miller filed nothing with the Wyoming court. Cases to the effect that action in the domiciliary state should be considered as having effect in this state [4] are in our opinion not in keeping with the interpretation of this court as to the function of a Wyoming court in the administration of an estate involving property in Wyoming.

In *In re Smith's Estate,* 55 Wyo. 181, 200, 97 P.2d 677, 684 (1960), this court said:

"Every state has plenary jurisdiction and control of the property, real and personal, within its borders. This includes the devolution and the administration of the property of a deceased person."

*In re Ray's Estate,* 74 Wyo. 317, 287 P.2d 629, 635 (1955), involved the question as to

---

4. See particularly *Mettler v. Warner,* 98 Neb. 111, 152 N.W. 327, 328 (1915) ; *Wilson v. Cox,* 49 Miss. 538, 540 (1873) ; and *Slaughter v. Garland,* 40 Miss. 172, 180 (1866). In the last of these cases the court said: "The tribunal having jurisdiction both of the probate and of the incident of revocation is manifestly the proper court of the domicile of the testator." This was quoted with approval by the Nebraska court. Our examination of the statute cited by the Nebraska court convinces us that the statute involved in *Mettler* was substantially different from ours. *Coble v. Coble,* 227 N.C. 547, 42 S.E.2d 898 (1947), holding that the dissent filed in another state becomes a part of the probate of the will and should go to the other state as a muniment of title, appears to us to be based on the same premise of recognition of the action of the domiciliary court as effective for all purposes. As we read our statute it is only the probate of the will, that is, the establishment of the authenticity thereof, that is recognized by our statutes as binding upon a Wyoming court in which the foreign will is probated.

which law should be applied in determining the rights of pretermitted children and in rejecting the argument that the law of Nevada, domicile of the testator and the place where the will was first probated, should govern, this court, quoting from 15 C.J.S. Conflict of Laws § 3, p. 833 (now 15A C.J.S. Conflict of Laws § 3(1), p. 370), expressed it to be a universal rule of law that

" ' * * * no law, statute or otherwise, has any force or effect of its own beyond the limits of the sovereignty from which its authority is derived.' ",

and in *In re Gibbs' Estate*, 73 Wyo. 425, 280 P.2d 556, 559 (1955), again quoting from *In re Smith's Estate,* it was held that claims against a decedent duly filed in the court where the estate was originally instituted but which had not been filed in Wyoming were to be ignored by the Wyoming ancillary administrator who could thereby satisfy all of the claims filed ·in this state while leaving the domiciliary estate insolvent.

While outside authorities are not completely in point on the factual situation there are a number of decisions which decline to give effect to an election filed in the domiciliary state. In *McGinness v. Chambers*, 156 Tenn. 404, 1 S.W.2d 1015, 1016 (1928), an election filed against a will in Oklahoma, the state of first probate, and which was not filed iń the Tennessee court within a year after the will was admitted in Tennessee, was held ineffective as to property in Tennessee. The court held that questions of the disposition of immovable property were controlled by

its statutes and that the Tennessee statute provided the exclusive method to elect against a will, that is, the widow

" * * * must signify her dissent in open court within one year after the probate of the will, and, of course, this dissent must be signified in the proper Tennessee court. If such dissent is not indicated within the prescribed time and in the manner required by law, the widow is conclusively presumed to have elected to take under the will." [5]

The only difference between *McGinness* and the case at bar is that the Oklahoma will was filed in Tennessee during the lifetime of the surviving widow, while in this case the will was not offered for probate in Wyoming until some time after the death of the surviving spouse. We think that difference is of no significance because whether or not the condition requiring the filing of an election in Wyoming ever occurred, that is, the probate of the will, the optional right given Mrs. Miller by the statute was never exercised by her as required by the law of this state. The fact that the condition to her exercise of the option never occurred does not operate to extend the option to third persons; only the law could do that and we have already held that the law in effect as of the date of Miller's death did not do so.

Since the option to elect against the will was personal to Mrs. Miller and she died without exercising the same as required by Wyoming law, the option terminated with her death. The action of the district court is therefore reversed.

5. Other cases refusing to give effect to an election filed in the state of first probate are *Apperson v. Bolton*, 29 Ark. 418, 428 (1874), holding that even though the filing of the dissent in Tennessee, the state of domiciliary jurisdiction, might have been legally effective in that state, it could not suffice where under Arkansas law the election had to be filed within one year of the death; *Bish v. Bish*, 181 Md. 621, 31 A.2d 348 (1943), holding that a filing against the will in Pennsylvania, more than 21 months after the granting of letters testamentary in that state, was not effective as a renunciation of the will in Maryland where land of the testator was located; and *Brinkerhoff v. Huntley*, 223 Ill. App. 591, 606 (1921), where it is said without citation of authority, that renunciation in Illinois has no extraterritorial force.