**In the Matter of the ESTATE OF Floyd C. RENO, Sr., Deceased.**

**Mathew RENO, Executor of the Estate of Floyd C. Reno, Sr., Deceased, Appellant (Petitioner),**

**v.**

**Dollie M. RENO, Appellee (Objector).**

**No. 5152.**

Supreme Court of Wyoming.

Dec. 26, 1979.

Thomas D. Roberts, Morgan & Brorby, Gillette, for appellant.

Robert W. Schrader and William D. Omohundro, Buffalo, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

McCLINTOCK, Justice.

The present appeal raises two related issues: First, whether the probate judge notified and advised a surviving spouse of her rights under the election statute, § 2–4–101, W.S.1977, as required by that statute. Second, whether a surviving spouse may change his or her election if the surviving spouse has not been given notice and advice by the probate judge. The probate court held that the probate judge did not notify and advise appellee of her rights under the election statute, and therefore the appellee has the right to revoke her original election. We affirm.

Following the death of Floyd C. Reno, Sr., on June 18, 1976, a petition for probate was filed on July 23, 1976. On September 13, 1976 an order was entered by the probate court admitting Mr. Reno's will into probate. On that same day the attorney for the estate forwarded a letter to Dollie M. Reno, Mr. Reno's surviving spouse, in regard to a conversation that they had had concerning the estate. A copy of § 2–4–101, W.S.1977 (at that time § 2–47, W.S. 1957, 1975 Cum.Supp.) and two alternate notice of election forms accompanied the letter. The letter urged Mrs. Reno to sign one of the notice of election forms.

Mrs. Reno acknowledged that she had received the letter and the documents from the attorney for the estate. Furthermore, Mrs. Reno stated that she had read the statute and believed that the statute required her to sign one of the notice forms within 30 days of the date that her husband's will was admitted to probate. She also testified that it was her impression that if she did not return one of the forms within the time specified by the statute she would be held "in contempt of court or it would hold up the proceeding or something."

A personal emergency made it necessary for Mrs. Reno to go to the state of Washington on November 2, 1976, where she remained until January, 1977. During the time that Mrs. Reno was in Washington, she had several telephone conversations and also corresponded with the attorney for the estate regarding her desire to receive one-fourth of the decedent's mineral rights in addition to taking under the will. Before going to Washington Mrs. Reno thought that she had retained her own attorney to represent her in the negotiations with the

other heirs; however, it appears that Mrs. Reno's attorney did not enter into negotiations with the heirs.

On November 30, 1976 Mrs. Reno signed a notice of election form waiving her right to take one-fourth of her husband's estate under the election statute. When Mrs. Reno elected to take under the will she was under the impression that the negotiations with the other heirs had been completed or would be finalized by the time the court received her waiver.

On November 16, 1976 the probate judge sent a letter by certified mail to Mrs. Reno's Story, Wyoming address notifying her of her rights under the election statute. Mrs. Reno testified that she never received the letter from the probate judge, and there is no evidence in the record to indicate otherwise. The record does reflect that this letter was accepted by Mrs. Reno's stepfather. Mrs. Reno had authorized her stepfather to collect her mail while she was in Washington.

The Final Accounting and Petition for Distribution was filed on November 23, 1977. When Mrs. Reno received a copy of this document she became aware for the first time that she was not to receive one-fourth of the minerals. She subsequently filed an objection to the Final Accounting and Petition for Distribution on December 29, 1978.

After a hearing was held on February 20, 1979 the probate court found that Mrs. Reno had not received "any notice or advice from the judge of the probate court with regard to her rights of election," nor "were her rights fully explained, or the consequences of her rights and actions explained" by the probate judge. It therefore held the election that Mrs. Reno signed was void. The court at the same time proceeded to give Mrs. Reno notice and advice concerning her rights under § 2–4–101, and granted her 30 days in which to make an election as provided in the statute. Mrs. Reno timely filed an election to take one-fourth of the estate in lieu of taking under the will.

Appellant's first contention is that the requirements of notice as provided for in § 2–4–101, have been complied with. Appellant bases this contention upon the presumption that there was constructive receipt of the probate judge's letter and furthermore that Mrs. Reno had actual notice of her right of election from the estate's attorney. However, neither of these facts is sufficient to satisfy the requirements of the election statute. Section 2–4–101 provides in pertinent part that a married person leaving surviving children or descendants of children by a previous marriage, and no such children or descendants of the marriage existing at the time of his or her death may by will dispose of not to exceed three-fourths of his or her real and personal estate to persons other than the surviving spouse. If the surviving spouse is given less than one-fourth, it is optional with him or her to elect to take one-fourth of the estate in lieu of any provision for the surviving spouse in the will. The section continues:

"In default of such election the will shall govern in the distribution of the estate, but in each of the above cases, in not less than sixty (60) days following the admission of the will to probate, the judge *of the probate court shall advise the surviving spouse of his or her right of election and shall explain fully such right and the consequence thereof.* In the event the probate judge fails in his duty to advise the surviving spouse within the time limit and in the particulars provided in this section, then the time of the election of the surviving spouse shall be extended to include thirty (30) days after such advice and explanation by the probate judge . . . ." (Emphasis added.)

As this court has previously discussed in *Matter of Estate of Miller*, Wyo., 541 P.2d 28, 30–31 (1975), before 1957 the right of election automatically expired six months after the will was admitted to probate and the statute contained no provision requiring the probate judge to give notice and advice to the surviving spouse. In *In re Hartt's Estate*, 75 Wyo. 305, 295 P.2d 985 (1956), this court held that a widow was not enti-

tled to elect to take against the will after the expiration of the statutory period, even though the widow did not know that she had a right of election during a time period. Undoubtedly in response to this decision, the legislature in 1957 included language in the election statute that specifically directed "the probate judge to give notice of and explain the right of election to the surviving spouse." *Matter of Estate of Miller*, 541 P.2d at 31.

Although we are required to construe the statute as it existed in 1976, it is noteworthy that the legislature, in a consolidation and revision of the probate code, effective April 1, 1980, still requires the probate judge to advise and explain the right given the surviving spouse and it is only after there has been a failure of such spouse to respond that the will controls. Chapter 142, §§ 2–5–101 and 102, S.L. of Wyoming 1979.

■ It may well be that the legislature, considering the rule in *Hartt* to be harsh and inimical to the surviving spouse's best interest, could have avoided the effect thereof by merely requiring that a notice be forwarded by the probate judge to the surviving spouse. We are not concerned with the motives that induced the legislature to go further and require advice and explanation. Our concern is to carry out the mandate of the legislature. While the dissent is correct in the view that the statute does not explicitly prohibit "constructive receipt" of the notice, it is nevertheless the case that the statute requires that the judge not only inform the surviving spouse of his or her right of election but also *explain* the consequences of that right. *Matter of Estate of Miller*, supra, 541 P.2d at 31. The concepts of "advice" and "explanation" are completely at odds with any notion of constructive notice. Both words bear the connotation of communication, that is, that the person addressed receives and understands the advice and explanation so that he can act intelligently in the matter. Such advice and explanation are an impossibility if the document of explanation is not received.

If constructive notice is adequate there is then no difference in principle between this case and *Hartt*. Certainly one way of describing that case is to assert that the widow there had constructive notice of what the statute provided. Yet we are sure that by amending the statute the legislature intended to bring about a different result in such situations. Similarly, to hold that the principle that notice to an agent is notice to the principal is applicable in this case, would be to subvert the plain language of the statute requiring advice and explanation. In the first place, there is no showing that Mrs. Reno's stepfather ever had notice of anything; the most that can be said is that he received the document, not that he read it. There is no reason to assume that he would open and read his stepdaughter's mail. The dissent would therefore impose constructive notice upon constructive notice to hold Mrs. Reno charged with knowledge that it cannot properly be said her "agent" had. More importantly, it is explanation, not notice that is required by the statute, and that statute does not contemplate the explanation being delivered to some third person, however close he might be to the spouse, who may or may not pass the information on to the spouse.

■ We consider the statute clear and unambiguous. As this court has held, when statutory language is clear, we will not look to statutory rules of construction, nor will we attribute another meaning to the statute. *Sanchez v. State*, Wyo., 567 P.2d 270, 274 (1977); *State ex rel. Director, Worker's Compensation Division v. Tallman*, Wyo., 589 P.2d 835, 838 (1979). We therefore reject appellant's argument that the statute requires only that the notice of right of election be mailed to the surviving spouse and that such notice does not necessarily have to be given by the probate judge.

■ The record supports the district court's finding that Mrs. Reno did not personally receive the letter from the probate judge explaining her rights under the election statute. Constructive receipt of the letter is not sufficient to satisfy the requirements of the statute. Therefore, Mrs. Reno was not given notice and advice as required by the election statute.

■ Appellant further contends that even if this court finds that the notice re-

quirement of the election statute has not been met, Mrs. Reno cannot revoke her original election. They support this contention by pointing to the fact that the record contains no evidence that Mrs. Reno signed the waiver in ignorance of material facts, or ignorance of the statutory right of an election. Nor was there any testimony establishing undue influence or fraud that would allow this court to set aside her election to take under the will. While we agree that the record reflects that Mrs. Reno knew she had a right to take under the will or elect to take one-fourth of the estate, it also shows that her election was made on a misapprehension that she had an agreement with the heirs which would have vested her with somewhat more than she received under the will. There is therefore no inequity in permitting her to withdraw from this election. In any event, this knowledge does not alter the fact that Mrs. Reno was not notified and advised in the manner contemplated by § 2–4–101. As this court stated in *Matter of Estate of Miller,* supra, 541 P.2d at 31:

". . . this right of election does not terminate until notice is given either to the surviving widow in her lifetime or to such personal representative after her death."

"[I]f the widow wants to change her mind during the period fixed in the statute, she may do so." *In re Hartt's Estate,* supra, 295 P.2d at 990. In the present case Mrs. Reno's right to make an election under the statute did not terminate until thirty days after she was advised by the probate judge of her right of election, and she was therefore not barred from revoking her original election.

Affirmed.

ROONEY, Justice, dissenting, with whom RAPER, Chief Justice, joins.

I cannot agree that the requirement of § 2–4–101, W.S.1977 was not here met.

1. The statute does not convert the trial judge into counsel for the spouse, and the requirements of attorney-client relationship should not be read into the statute. Any full explanation by the court "of the rights and consequences" of the election could be little more than as accomplished by the words of the statute.

Furthermore, I believe that the majority opinion places an onerous and unnecessary impediment on the probate of an estate.

The majority opinion requires, as a practical matter, that the court bring the spouse *personally* before it for the purpose of advising him or her of the right to make an election and of the consequences thereof. How else can it be positive that the advice was received as required by the majority opinion? In fact, such opinion will authorize a spouse to prevent timely progress of probate proceedings by making herself or himself unavailable for the advice—through a trip to Washington or otherwise. The spouse does not exist in a vacuum, but has some obligation to react in a reasonable fashion to information in his or her actual or constructive possession.

The statute does not mandate that the advice be given *personally.* It does not prohibit "constructive receipt" thereof as is read into the statute by the majority opinion.[1] In this case, the failure to receive the letter of advice by Mrs. Reno was her own fault. It was her agent that did not forward the document which was properly sent by the court to her address. There is no controversy over the fact that the court mailed a letter containing the necessary advice to Mrs. Reno's address; that it was sent certified mail—return receipt requested; that it was received at that address by her stepfather; and that she authorized him to receive her mail. With reference to this authorization, she testified:

"Q. And, did he receive any other mail for you?

"A. He received all my mail.

\*      \*      \*      \*      \*      \*

"Q. He was authorized to pick up the mail?

Even should the judge be cast in the role of counselor, he could seldom "advise" or "explain" further at the time in the proceedings at which such is required, inasmuch as the inventory and appraisement of the estate would not normally be available at that time.

"A. Yes, he was."

She received other mail relative to the probate of the estate at that address, including the Notice of Final Settlement, the return receipt for which was signed by her stepfather.

She should not be permitted to avoid the purpose of the statute by virtue of her own failure to arrange for transmittal to her of legal and business communications sent to the address designated by her.

> "It is a fundamental rule underlying the structure of agency law that the principal is bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment * * *." 3 Am.Jur.2d Agency § 261 (1962), citing *Jones v. Wettlin*, 39 Wyo. 331, 271 P. 217 (1928) among many other cases.

I would hold that advice in a written form, mailed to the spouse's address would satisfy the requirement of the statute, absent a showing that the communication was not delivered to that address.

This holding gives effect to the legislative intent, rather than the contrary. It is generally thought that the 1957 amendment to § 2–4–101, W.S.1977 (relative to advising the spouse concerning the right to make an election and the consequences thereof) was a result of the decision of this court in the case of *In Re Hartt's Estate*, 75 Wyo. 305, 295 P.2d 985 (1956). The *Hartt* case held in effect that the spouse was presumed to have knowledge of the election right and of its consequences. Against the widow's contention that "she did not know that she had the right to dissent from the will," the court held that there was no duty on the part of the executors to so advise her (she contended that they had this duty), and it quoted with approval the following at page 999 of 295 P.2d from *Stephens v. Gibbes*, 14 Fla. 331, 356:

> " 'Neither the executors, the other devisees or legatees, nor the creditors, are in any legal sense under an obligation to give the widow notice of the provisions of the will. The law presumes her knowledge of the will and its contents as well as her knowledge of her right of dower and its nature, and she is bound to know that if she omits for the space of one year to signify her dissent, she cannot claim dower.' "

The *Hartt* case did not involve the issue of whether or not advice or notice was properly given. It involved the issue as to whether or not such was necessary at all. The legislature subsequently amended the statute to require the giving of advice or notice. It did not require such to be given personally; and, as already stated, I believe Mrs. Reno was adequately advised pursuant to the statute.

I believe the statute clearly and unequivocally sets forth the interpretation I here give to it. Normally, I would, *thus*, agree with the majority of the court in its statement that the statute is clear and unambiguous. However, since the fact is that we are in disagreement concerning the meaning of the language of the statute, I must conclude that the statute is not clear and unambiguous and that the aforesaid determination of legislative intent is necessary. Certainly, recent legislative attention to probate procedure emphasizes the dissatisfaction with formality therein such as required by the majority opinion.

The use of the words "advice" and "explanation" in the statute have no significance in this determination. "Advice" and "explanation" are routinely and customarily given in writing and with constructive receipt in connection with ordinary happenings in everyday life. Labels and directions explaining the contents and uses thereof are on many of the articles purchased daily in the marketplace. Acceptances of many contracts made daily in the business world are effective when mailed to the offerer's address. Decisions and opinions of courts, including this one, explaining the nature of controversies and their solutions, and advising relative to future actions are effective when issued whether or not they are actually read by anyone. Many other instances can be referenced in which a communication is effective when uttered or issued and directed to a particular person or group of persons without regard to the actual (as

distinguished from constructive) receipt thereof.

The pertinent timetable in the case is: [2]

9/13/76 — Will admitted to probate.

11/16/76 — Court mailed letter of advice to Mrs. Reno's address, certified mail—return receipt requested.

11/18/76 — Return receipt signed by Mrs. Reno's stepfather.

11/30/76 — Mrs. Reno signed Notice of Election to take under the Will.

12/6/76 — Notice of Election filed with the court.

Therefore, the requirements of § 2–4–101, W.S.1977, relative to the election by the spouse, were accomplished within the times specified therein, and the court's order to the contrary should be reversed with the case being remanded for proceedings accordingly.

2. The fact that Mrs. Reno had actual knowledge of the right to make an election and of the consequences thereof is not pertinent to the determination of this case, except to emphasize the absurdity of the necessity to give the advice *personally*. That she had such knowledge is evidenced in several places in the record, including her statement in a letter postmarked November 3, 1976 that "I would be in a better bargaining position if I don't sign & file the one taking the wills" and including the following contents of her letter to Mr. Swanton dated November 9, 1976:

"I would greatly appreciate it if you, as Floyd's lawyer for his estate would contact the other inheritors for me. I have the option of going with Floyd's Will or taking under the statutes of the state of Wyoming whereby I would be entitled to one-fourth of the entire estate.

"Rather than ask for one-fourth of the estate I would like to go with the Will but feel very strongly that I am entitled to an equal share of Floyd's mineral rights in lieu of one-fourth of the entire estate.

"Please contact the other inheritors at your earliest convenience since my decision must be made and the papers filed before December 13."