147 So.2d 53 (1962)
Succession of Nat MARTIN.
No. 9753.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
Rehearing Denied November 29, 1962.
Certiorari Denied February 8, 1963.
*54 Kennon, White & Odom, Baton Rouge, Graydon K. Kitchens, Minden, for appellant.
Stewart & Stewart, Minden, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
This suit is a controversy between the heirs of W. J. and Rosa Martin and the heirs of Cora A. Martin, and involves entitlement to an interest in some eighty-eight (88) acres of land situated in Webster Parish. The property in dispute was owned by Nat Martin, who on March 3, 1931, died testate and without issue, at his domicile in Nevada County, Arkansas. The will was admitted to probate and letters testamentary were issued to W. V. Tompkins as executor on March 6, 1931, by the probate court of said county. Under the terms of the will two-thirds of the estate was to be bequeathed to his wife, Cora A. Martin, and the remainder, one-third, to his parents, W. J. and Rosa Martin. At the time of Nat Martin's death he owned an undivided one-eighth interest in and to the property in Webster Parish. This property was purchased during the marriage of Nat and Cora Martin and thus fell into community of acquets and gains in this state.
At the time of her husband's death, his estate apparently was in some financial difficulties and this prompted his widow, Cora A. Martin, to avail herself of Sections 61-222 through 61-225 of the Arkansas statutes and execute an instrument on July 24, 1931, which recites that she elects to renounce the will of her late husband and be endowed with the land and personal property of which he died seized. It further states:
"In consideration of the premises and of the sum of One Dollar to me in hand paid and for the purpose of renouncing said Will, I, C. A. Martin, widow of Nat Martin, deceased, do hereby grant, sell, convey and quit claim to the heirs and legal representatives of the Estate of Nat Martin, deceased, all the property bequeathed to me under the Will of the said Nat Martin, deceased."
The prime issue determinative of this case is whether vel non the act of renunciation has any effect upon the distributed shares of all parties litigant in the Webster Parish property. The heirs of W. J. and Rosa Martin, plaintiffs herein, contend that the act of renunciation as executed by Cora Martin in accordance with the laws of Arkansas, where it was confected, must be recognized and enforced by the court in Webster Parish, Louisiana, wherein the land is situated. On the other hand, the heirs of Cora Martin contend that the act of renunciation must be considered invalid under Louisiana law and that their rights are to be fixed under the will of Nat Martin. It is readily conceded by both sides that the will of Nat Martin was valid under the laws of Arkansas and must be recognized as valid by the courts of Louisiana, by reason of LSA-R.S. 9:2401, which is part of the Uniform Wills Law and also by reason of LSA-R.S. 9:2421 and 2423, which are relevant portions of the Uniform Probate Law. Further, it is conceded *55 that the act of renunciation and election of dower rights as executed by Cora A. Martin, was valid in form in Arkansas where it was made, but that the form of said instrument fails to conform with LSA-C.C. art. 1017, which provides:
"The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses."
The Succession of Nat Martin discloses that the deceased left property in Arkansas, both real and personal, and undoubtedly the act of renunciation was directed at securing relief under the statutes of said state, permitting her to elect to receive dower in lieu of a legacy under the will. We cannot say that the act of renunciation was executed for the purpose of affecting the property in Louisiana. Nonetheless, we are confronted with the question as to what effect, if any, shall be given to the act of renunciation insofar as it affects the property in Webster Parish. LSA-C.C. arts. 9, 10, 491 and 1017 have particular relevancy in testing the validity of the act of renunciation. These are:
"Art. 9. The law is obligatory upon all inhabitants of the State indiscriminately; the foreigner, whilst residing in the State, and his property within its limits, are subject to the laws of the State."
"Art. 10. The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
"But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
"The exception made in the second paragraph of this article does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign State or country, disposes by will or testament, or by any other act causa mortis made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act causa mortis, and at the time of his death, he resides and is domiciliated out of this State."
"Art. 491. Perfect ownership gives the right to use, to enjoy and to dispose of one's property in the most unlimited manner, provided it is not used in any way prohibited by laws or ordinances.
"Persons who reside out of the State, can not dispose of the property they possess here, in a manner different from that prescribed by its laws."
"Art. 1017. The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses."
It must be conceded that the act of renunciation herein involved determines whether or not the plaintiffs or the defendants will receive the real estate in controversy. Of significance is the general legal principle which is stated in 11 Am. Jur. 328, 330, verbo "Conflict of Laws":
"A principle of law which is acquiesced in by the jurists of all civilized nations and thus part of the jus gentium is that all real or immovable property is exclusively subject to the laws of the country within which it is situated, and no interference with it by any other sovereignty can be permitted. Therefore, all matters concerning the title and disposition of real property are determined by what is known as the lex loci rei sitae, which can alone prescribe the mode by which a title to it can pass from one person to another or an interest therein of any sort can be gained or lost. This general principle includes all rules which govern *56 the descent, alienation, and transfer of such property and the validity, effect, and construction of wills and other conveyances."
That the law of the situs of immovable property controls or governs its acquisition, disposition and devolution, is so stated in 15 C.J.S. Conflict of Laws § 19a., pp. 936, 937, verbo:
"Immovable property is exclusively subject to the laws of the government within whose limits it is located, and it is a rule firmly established by numerous decisions that the law of the jurisdiction in which such property is situated controls and governs its acquisition, disposition, and devolution. This rule, which is embodied in the Restatement, is universal, applying generally to all property classed as immovable, and operates between the several states of the United States as well as between countries entirely foreign to each other. It is not in the power of any state by any legislative act to prescribe the mode in which lands in another state may be disposed of or title thereto passed from one person to another."
In Baker v. Baker (Bank of Delhi, Intervenor) 125 La. 969, 52 So. 115 (1910), the court held that a deed or gift of lands in Louisiana, executed by the donor alone in the State of Texas by private act and acknowledged before a notary public, is null and void for want of the formalities required by the laws of the situs. A thorough discussion of the effect to be given muniments of title executed in a foreign state to have effect upon real estate situated in another state, appears in the Succession of Larendon, 39 La.Ann. 952, 3 So. 219, 221 (1887). That case involved an act of donation drawn up in Louisiana in the form in which such acts are required to be put in Georgia, to convey real estate in that state. Our court held the act valid, although not passed before a notary and two witnesses, as the laws of this state prescribe under pain of nullity. Under this holding the Supreme Court of Louisiana gave effect to the law of Georgia as the real estate involved was located in the latter state. The court, in effect, announced that the rights and obligations arising under acts passed in one state, to be executed in another, respecting the transfer of real estate in the latter, are regulated in the point of form, substance and validity by the laws of the state in which such acts are to have effect. In a most persuasive opinion, the author of the opinion, Chief Justice Bermudez, laid down the rule that the laws of the place where real property is situated exclusively governs in respect to the rights of the parties as to such property, particularly, as to the modes of transfer and the solemnities which should accompany them. After quoting from Story's "Conflict of Laws", Kent's Commentaries, Wharton on "Private International Law", and Rorer on "Interstate Law", the author of the opinion proceeded to a discussion of Art. 10 of our Code, stating:
"Our own Code, art. 10, has, in broad and general terms, recognized the principle announced and applied, when it says: `The form and effect of public and private written instruments are governed by the laws or usages of the places where they are passed or executed. But the effect of acts passed in one country, to have effect in another country, is regulated by the laws of the country in which such acts are to have effect.'
* * * * * *
"The article contemplates the form, substance, and effect of acts, public and private. As it cannot purport to legislate for other states, it must be considered as mandatory only where the form, substance, and effect of such acts relate to property within this state, and therefore that the validity of these must be governed by our own laws and usages. There is no doubt that this is the case with every sovereignty. *57 Hence it is that the United States supreme court has well said, touching this class of property, that `the power of the state to regulate the tenure of real estate within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted.' But the lawgiver has foreseen the contingency of an act passed in one place, and intended to be carried out or executed in another, and has wisely provided therefor. Read in the proper light, the second paragraph of the article, touching that contingency, simply means: But the rights and obligations, arising under acts passed or drawn up in one country, to be exercised or complied with in another country, are regulated by the laws of the places where such acts are to be executed. * * *"
Reverting to the effect to be given to the election or renunciation of rights by Cora A. Martin, the rule is stated in 11 Am. Jur. 348, verbo "Conflict of Laws":
"According to the general rule, the necessity of an election to take under or against a will, with respect to the disposition of realty, is to be determined by the law of the jurisdiction where the land is situated. * * *"
We have not been referred to any Louisiana authority directly in point. However, in the case of Hoggatt v. Gibbs, 12 La.Ann. 770 (1857), the Supreme Court of this state considered whether a deed of relinquishment executed in the State of Mississippi affecting property situated in Louisiana, should be considered null and void and unenforceable in this state. The court found that the so-called relinquishment and quit claim was equally void in form and validity when tested by the laws of Mississippi and Louisiana. The majority of the court held that it was unnecessary to pass on the question of whether Louisiana would test the validity of the deed by its own laws. Spofford, J., however, rendered a concurring opinion in which he stated that insofar as the act purported to operate upon real property situated in Louisiana, its form and effect should be determined by the laws of Louisiana alone. The Chief Justice of the court in a concurring opinion, stated unequivocally that the real estate and slaves of the decedent located in Louisiana must be governed by her laws. Berthelot v. Fitch et al., 44 La.Ann. 503, 10 So. 867 (1892) followed this holding and, with citation of a number of Louisiana cases, recognized the rule that immovable property in another state belonging to heirs must be administered under the laws of that state.
Our jurisprudence has consistently recognized the lex loci rei sitae when confronted with real property situated in another state. It has, with equal determination, insisted that the same rule be applied as to real estate situated in this state. It was stated by this court in Jarel v. Moon's Succession, La.App., 190 So. 867, 869 (2d Cir.1939):
"In the matter of the Estate of Frances Parke Lewis, 32 La.Ann. 385, the court made the following statement:
"`There can be no doubt, as held by our predecessors, thatwhen a person dies, leaving property in two or more States, his property in each state isfor the purpose of its administrationconsidered as a separate succession; * * *.'
"Any attempt on the part of a court to do otherwise would necessarily lead to a dilemma, as we would find courts in whatever states the property of the deceased was found, attempting to administer the entire estate of the deceased."
In line with foregoing authorities we hold that the act of renunciation executed by Cora A. Martin on July 24, 1931, is null and void and of no effect, being in conflict *58 with LSA-C.C. art. 1017. With this conclusion it is unnecessary to consider other issues posed herein. The heirs of Cora A. Martin, therefore, insofar as the property situated in Webster Parish is concerned, take under the provisions of the will. The judge a quo reached this same conclusion and accordingly, the judgment of the district court will be affirmed.
It is, therefore, ordered that the estate of Cora A. Martin is entitled to inherit under the legacy of Nat Martin two-thirds of his interest (an undivided one-eighth interest) in and to the following described property situated in Webster Parish, Louisiana:
"West Half (W ½) of Northwest Quarter (NW ¼) and eight (8) acres in Southwest corner of Southeast Quarter (SE ¼) of Northwest Quarter (NW ¼), all in Section 17, Township 23 North, Range 9 West, Webster Parish, Louisiana."
The judgment is affirmed at appellants' cost.