Mabel L. MILLER, Plaintiff,

and

Betty Miller, Plaintiff and Appellant,

v.

Vernon A. THODE and the Heirs, Devisees, Legatees, Executors, Administrators and Assigns of June I. Thode, a/k/a June Thode, deceased; United States of America, acting through the Farmers Home Administration, United States Department of Agriculture; County of Lake, a political subdivision of the State of South Dakota; the Director of the Department of Revenue, State of South Dakota; and All Persons Unknown Who Have or Claim to Have Any Estate or Interest in, or Lien or Encumbrance Upon the Premises Described in the Plaintiffs' Complaint, Defendants and Appellees.

No. 14737.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1985.

Decided Aug. 6, 1985.

Thomas M. Issenhuth of Arneson, Issenhuth & Gienapp, Madison, for plaintiffs and appellants.

Frank E. Denholm of Denholm & Glover, Brookings, for defendants and appellees.

FOSHEIM, Chief Justice.

This action involves the interests of Betty Miller (Betty) and the heirs of Vernon Thode (Vernon) in three parcels of land. Betty appeals from an order adversely quieting the title to all three parcels in the heirs of Vernon. We affirm.

On February 18, 1952, Fred Miller executed his Last Will and Testament. He died May 16, 1958, and was survived by his wife Mabel and daughters, Betty Miller and June Thode (June). The estate was distributed on February 25, 1959. June died on December 3, 1977, survived only by her husband Vernon, who is also now deceased. Mabel continued to live on the family farm and receive the farm income until her death on April 16, 1980. Betty remained unmarried until after the deaths of her mother and sister.

Paragraph "Second" of Fred's Will identifies four hundred acres of real property and grants Mabel a life estate in all the land. In Paragraph "Third," Fred devises two hundred acres to June, subject to Mabel's life estate. In Paragraph "Fourth," Fred devises to Betty the remaining two hundred acres, again subject to the life estate in Mabel. In Paragraph "Sixth" Fred devises all the residue of the estate to Mabel.

The "Fifth" paragraph is the basis of this litigation:

*Fifth:* That the said bequest to my said daughters are made on the condition that in case either of my said daughters should die before the death of my said wife leaving issue, then the issue of such deceased daughter is to take that share of my estate which such deceased daughter would have received if living at the time of the death of my said wife; but if either of my said daughters should die before the death of my said wife, leaving no issue, then the bequest to such daughter is hereby rescinded and cancelled and that the bequest to such deceased daughter leaving no issue, is to revert to my estate and to be distributed to my other daughter, or to the issue of such daughter living at the time of the death of my said wife.

The land involved in this appeal is separated into three parcels:

Parcel 1: The Southeast Quarter of the Southeast Quarter (SE ¼ of the SE ¼) of Section Sixteen (§ 16), Township One-hundred-seven (T 107) North, Range Fifty-one (R 51) West in Lake County, South Dakota.

Parcel 2: The South One-half of the Northeast Quarter of the Southeast Quarter (S ½ of the NE ¼ SE ¼) of Section Sixteen (§ 16), Township One-hundred-seven (T 107) North, Range Fifty-one (R 51) West in Lake County, South Dakota.

Parcel 3: The Northwest Quarter (NW ¼) of Section Twenty-two (§ 22), Township One-hundred-seven (T 107) North, Range Fifty-one (R 51) West in Lake County, South Dakota. For better understanding, the parcels are diagramed in this manner.

At the time of his death, Fred owned the East One-half of the Southeast Quarter (E ½ of the SE ¼) of Section Sixteen (§ 16), Township One-hundred-seven (T 107), Range Fifty-one (R 51). His Will made specific mention of Parcel 1 but omitted any reference to the Northeast quarter of the Southeast Quarter (NE ¼ of the SE ¼) of Section Sixteen (§ 16), comprising forty acres.

On March 28, 1947, Fred and Mabel acquired Parcel 3 as joint tenants with right of survivorship and not as tenants in common. That deed was recorded on July 18, 1947. Apparently Fred believed he owned this property individually because his Will granted Mabel a life estate with remainder to June subject to the reversionary clause contained in Paragraph "Fifth."

Subsequent to settlement of Fred's estate and in an attempt to effectuate the true intent of his Will, Mabel executed a warranty deed on July 14, 1958, conveying Parcel 3 to June in fee subject to a life estate in Mabel. The deed does not mention the reversionary language of Paragraph "Fifth" of Fred's Will.

Mabel, June and Betty also decided that Fred inadvertently omitted disposition of the Northeast Quarter of the Southeast Quarter (NE ¼ of the SE ¼) of Section Sixteen (§ 16) because he had intended to give each of his two daughters an equal amount of land subject to a life estate in Mabel. Again, in an attempt to carry out Fred's wishes, on October 7, 1958, Mabel conveyed the North One-half of the Northeast Quarter of the Southeast Quarter (N ½ of the NE ¼ SE ¼) to Betty and the South One-half of the Northeast Quarter of the Southeast Quarter (S ½ of the NE ¼ SE ¼) (Parcel 2) to June. Each deed conveyed twenty acres. This deed to June (Parcel 2) reserved a life estate in Mabel but like the deed to Parcel 3, it made no mention of the reversionary language of Paragraph "Fifth" of Fred's Will.

Mabel, Betty and June all signed the final account of Fred's estate on January 31, 1959. Page five of the account sets forth the land transfer arrangements. The final decree of distribution, dated February 25, 1959, adopted, approved and confirmed the final account. No appeal was taken.

The first paragraph of page five of the final account describes the transfer of Parcel 3 from Mabel to June with a retained life estate. No mention is made of the reversionary clause found in Paragraph "Fifth" of Fred's Will.

The next paragraph of the account identifies the parcels (including Parcel 1) that were transferred to June and Betty by Fred's Will, subject to Mabel's life estate. That paragraph is likewise silent concerning the reversionary clause.

The third paragraph of that page provides that title to the two twenty acre plots (including Parcel 2) should vest with Betty and June respectively, subject only to the life estate in Mabel and "without any provision for reversion thereof as contained in the Will of the decedent."

June deeded Parcel 3 to her husband and herself as joint tenants with right of survivorship, subject to Mabel's life estate. Vernon thus became sole owner of this property upon the deaths of June and Mabel. Vernon received title to Parcels 1 and 2 as the beneficiary of June's Will.

The issue is whether June's estate retained fee title in any of these three parcels free from precedent conditions set forth in Fred's Will. Betty contends June's interest in Parcel 1 was subject to Paragraph "Fifth" of Fred's Will and since June died without issue before Mabel, June's interest automatically reverted to Fred's estate and then to Betty. It is Betty's position that the absence of a reversionary clause in the deeds from Mabel to June for Parcels 2 and 3 was an inadvertence because Fred clearly intended that all the property remain in the Miller family. She contends that finding a fee title in June results in an unjust windfall to Vernon's heirs and frustrates Fred's intention.

Under SDCL 30-23-38, a final decree of distribution is conclusive as to the rights of heirs. It may only be modified, reversed or set aside on appeal.

■ We have consistently held that this statute imposes finality on the lower court's construction and determination of a Will and that the decree of distribution assigning the property is conclusive. *Black v. Unknown Creditors*, 83 S.D. 119, 122, 155 N.W.2d 784, 786 (1968). Even though a final decree may be erroneous, it becomes final and conclusive if it was rendered with due process. *Id.* at 129, 155 N.W.2d at 786. *See also White v. White*, 76 S.D. 503, 81 N.W.2d 606 (1957) and *In re Grimes*, 87 S.D. 187, 204 N.W.2d 812 (1973). Further, a recitation in the final decree that the estate or portions thereof are to be distributed in accordance with the Will does not bring the Will itself into the decree; the decree cannot be impeached by the Will or other evidence of the testator's intent. *Bechard v. Union County*, 71 S.D. 558, 27 N.W.2d 591 (1947). The decree may even pass an estate greater than what in reality was conveyed by the Will. *Kirby v. Western Surety Company*, 70 S.D. 483, 487, 19 N.W.2d 12, 13 (1945).

■ Once a court has construed a Will and issued the decree of distribution, the decree is subject to revision only upon appeal or in some proceeding that constitutes a direct attack. *Bechard*, 71 S.D. at 563, 27 N.W.2d at 593; *Black*, 83 S.D. at 124, 155 N.W.2d at 787. A quiet title action does not constitute a direct attack but is rather a collateral attack that is not now permitted. *Black*, 83 S.D. at 124, 155 N.W.2d at 787.

■ While the circuit courts have unlimited equity jurisdiction in probate matters, the propriety of using it is flexible. *Spitzer v. Spitzer*, 84 S.D. 147, 154, 168 N.W.2d 718, 722 (1969). The probate court may enter a final decree in accordance with a family agreement. *Moncur v. Jones*, 72 S.D. 202, 213, 31 N.W.2d 759, 765 (1948). Where a decree is issued in reliance on a family agreement and others have accepted the decree as a proper distribution of property belonging to the decedent, the agreement should stand. *Behrens v. Baldenecker*, 76 S.D. 327, 330, 77 N.W.2d 917, 919 (1956). Such family agreements are not against public policy. *In re Vasgaard's Estate*, 62 S.D. 421, 427, 253 N.W. 453, 456 (1934).

■ In applying this line of cases to the issues before us, it is clear that the final decree is conclusive as to the title to the three parcels of land in question. Parcels 2 and 3 were held by Mabel in fee prior to

her transfer to June. Mabel had absolute dominion to use or dispose of the property as she wished. *See* SDCL 43–3–5. Mabel's deeds to June for Parcels 2 and 3 were unqualified except for the reserved life estate. The final accounting specifically stated that the reversionary clause of Fred's Will should not apply to the transfer of Parcel 3. Further, the final accounting does not indicate any intent that the reversionary clause should apply to a transfer of Parcel 2.

 There are no similar deeds affecting title to Parcel 1. This Parcel passed to June by Fred's Will and was initially subject to Paragraph "Fifth" of the Will. The final decree of distribution, however, did not subject June's title to the reversionary clause. While the decree of distribution does not pass title, it does adjudicate title which is conclusive subject only to appeal. *White*, 76 S.D. at 508, 81 N.W.2d at 609. Therefore, even though June took title to Parcel 1 under the Will, the final decree of distribution altered that taking. By the terms of the final decree, June took title to Parcel 1 subject only to Mabel's reserved life estate.

■ We cannot now go behind the decree of distribution and speculate on the meaning of the Will and Fred's intent. *See Woolley v. Woolley*, 52 S.D. 193, 197, 217 N.W. 196, 197 (1927).

The judgment is affirmed.

WOLLMAN, MORGAN, and HENDERSON, JJ., and MILLER, Circuit Judge, concur.

MILLER, Circuit Judge, sitting for WUEST, Circuit Judge, Acting as a Supreme Court Justice, disqualified.