In the Matter of the ESTATE OF
Louis Dale LINGSCHEIT,
Deceased.

No. 15049.

Supreme Court of South Dakota.

Argued March 19, 1986.
Decided May 28, 1986.

Robert G. Marmet of Marmet & Armstrong, Centerville, for appellants Daniel Thompson, Keith Thompson, and Wayne Thompson, individually and on behalf of their children; Kathleen J. Armstrong of Marmet & Armstrong, Centerville, on brief.

Henry Horstman of Horstman, Braley & Luebke, Parkston, for Executor Francis Laber.

James D. Taylor of Tinan, Padrnos, Smith & Taylor, Mitchell, for appellee Estelle Lingscheit.

HENDERSON, Justice.

## PROCEDURAL BACKGROUND/FACTS

This is an appeal from a Decree of Final Distribution of (Lingscheit) Estate. We affirm in part, reverse in part, and remand.

Louis Dale Lingscheit (Decedent), died on March 14, 1981. Decedent had a valid will and at the time of his death, Decedent was domiciled in Oklahoma. Decedent left no issue, but he was survived by his wife, Estelle Lingscheit (Wife), three nephews, Wayne, Keith, and Dan Thompson (Nephews), and the Nephews' children. Wife apparently has issue of her own.

Decedent owned real and personal property in Oklahoma and South Dakota. By his will, as concerns the South Dakota property, Decedent devised a quarter section of Hutchinson County farmland to Norman Kummer; devised a life estate to his Nephews in another quarter section of farmland, with the remainder to the Nephews' children; devised a house located in Parkston to the Nephews in fee; and bequeathed all South Dakota personal property to the Nephews outright. Decedent acquired all South Dakota property through inheritance.

As concerns the Oklahoma property, Decedent, by his will, directed that funds located in Caddo County, Oklahoma, be placed in trust with interest payable to Decedent's Wife during her lifetime, with the remainder to the Nephews; directed that all of his machinery, vehicles, and tools be sold and the proceeds delivered to the trust; devised and bequeathed all property in Comanche County, Oklahoma, to Wife outright; and devised to Wife a life estate in real property located in Caddo County with the remainder to the Nephews.

In July 1981, Decedent's will was admitted to probate in Oklahoma and on August 20, 1981, Wife filed, in Oklahoma, an Election to Take, which announced her election to take under the Oklahoma laws of succession rather than under Decedent's will.

On August 31, 1981, Francis G. Laber (Executor), the individual named in Decedent's will to act as executor in South Dakota, filed a Petition for Letters Testamentary and for Independent Administration of Estate in circuit court in Hutchinson County, South Dakota. Notice of Hearing was mailed to Wife that same day and Notice of Hearing and Notice to Creditors was first published on September 2, 1981. On September 21, 1981, Decedent's will was admitted to probate in South Dakota.

On November 23, 1981, Wife filed in South Dakota a Petition for Elective Share of Estate. A hearing was held on this petition and thereat, the Nephews asserted that it should be denied because Wife did not file her election within the time required by SDCL 30–5A–6. The circuit court, however, determined that Wife's right to an elective share was to be governed by Oklahoma statutes, SDCL 30–5A–1; further, because Oklahoma statutes did not require the election to be made within any time period, Wife's Petition for Elective Share of Estate was proper. The

circuit court's decision in this regard is contained within an Order Determining Elective Share of Surviving Spouse, filed January 11, 1982. Therein, the circuit court adjudged that Wife had made a valid election to take an elective share and it ordered that upon distribution of the estate in South Dakota, Wife was to receive the share provided by Oklahoma law.

In the following years, various events and maneuvers transpired concerning the Decedent's estates in Oklahoma and South Dakota. In late 1984, several motions and petitions were set for hearing, and on December 14, 1984, the circuit court entertained all such matters. At this hearing, the Nephews objected to the apportionment of federal estate taxes; objected to the awarded attorney fees; and objected to the fees awarded to Executor. Nephews also motioned the circuit court to reconsider the validity of Wife's election to take against the will.

By a Decree of Final Distribution of Estate, from whence Nephews appeal, the circuit court, inter alia, awarded Executor fees in the sum of $5,000; awarded Executor's attorney fees in the sum of $6,240; apportioned federal estate taxes among the Nephews, Wife, and Norman Kummer; distributed to Wife a one-half interest in all of Decedent's South Dakota property; and distributed a 13.31% interest in Decedent's South Dakota personal property to Norman Kummer.

Four issues arise from this appeal and we address them seriatim.

## DECISION

### I.

IS OKLAHOMA LAW CONTROLLING AS TO WHEN AN ELECTIVE SHARE MUST BE FILED IN SOUTH DAKOTA? OR DOES SOUTH DAKOTA PROCEDURAL LAW APPLY?

Before considering the merits of this issue, we must dispose of Wife's contention that the Nephews are precluded from attacking the elective share awarded in the Decree of Final Distribution of Estate because they failed to appeal the January 1982 Order Determining Elective Share of Surviving Spouse.

■ SDCL 15–26A–3 enumerates the judgments and orders from which an appeal may be taken. SDCL 15–26A–6 provides the time limitations in which such appeals must be prosecuted. If an appeal is not timely filed, this Court has no jurisdiction to consider it. *Weins v. Weins*, 70 S.D. 620, 621–22, 20 N.W.2d 228, 228–29 (1945). We determine, however, that the Order Determining Elective Share of Surviving Spouse is not within the purview of SDCL 15–26A–3.

■ First, because the Order did not finally dispose of the entire proceedings subject only to appeal to this Court, *In re Schneider's Estate*, 71 S.D. 618, 622, 28 N.W.2d 567, 568 (1947), it is not a judgment within SDCL 15–26A–3(1). *See also*, SDCL 15–6–54(a). Second, the Order does not determine the action and prevent a judgment from which an appeal might be taken. Thus, it is not within SDCL 15–26A–3(2). Third, the Order is not a final order within SDCL 15–26A–3(4), because it is the final decree of distribution which is conclusive as to the rights of the heirs and imposes finality on the circuit court's determination. *See* SDCL 30–23–38; *Miller v. Thode*, 372 N.W.2d 459, 462 (S.D.1985); and *Black v. Unknown Creditors*, 83 S.D. 119, 122, 155 N.W.2d 784, 786 (1968). Therefore, the Nephews are properly before the Court to attack the Decree of Final Distribution of Estate.

■ Turning now to the merits of this issue, SDCL 30–5A–1 provides:

If a married person domiciled in this state dies, the circuit court shall have jurisdiction to award an elective share of the augmented estate under the limitations and conditions stated in this chapter. If a married person not domiciled in this state dies, *the right, if any,* of the surviving spouse to take an elective share in property in this state is governed by the law of the decedent's domicile at death. (Emphasis supplied.)

Based on the last sentence of this statute, and the fact that Okla.Stat.Ann.Title 84, § 44 (West 1970), did not provide a time limitation for filing an elective share, the circuit court concluded that Wife's Petition for Elective Share of Estate was properly filed. We determine, however, that the circuit court's conclusion was erroneous.

SDCL 30–5A–1 provides that it is "the right, if any," of a surviving spouse to elect against a non-domiciliary decedent's will, which is to be determined by the law of the decedent's domicile. SDCL 30–5A–1 does not provide that it is the right to so elect, and the procedures for so electing, which are to be governed by the law of the decedent's domicile. We interpret SDCL 30–5A–1 to require our circuit courts to follow the law of the decedent's domicile which determines the right, nature, and extent of the share which may be elected, and not to require our courts to follow the procedural niceties, or the lack thereof, embodied within the law of the decedent's domicile. South Dakota law therefore would regulate how and when an elective share is to be filed concerning a non-domiciliary's South Dakota property. Thus, in the present case, since Wife failed to comply with the time limitations for filing an elective share under SDCL 30–5A–6,* her Petition for Elective Share of Estate should have been denied. We note that several cases have held that failure to comply with *local* procedural requirements abrogates the non-domiciliary spouse's ability to take an elective share. *See Rannels v. Rowe*, 92 C.C.A. 177, 166 F. 425 (8th Cir.1908); *Apperson v. Bolton*, 29 Ark. 418 (1874); *Succession of Martin*, 147 So.2d 53 (La.App. 1962), *cert. denied*, 243 La. 1003, 149 So.2d 763 (1963); *Bish v. Bish*, 181 Md. 621, 31 A.2d 348 (1943); *Lee's Summit Bldg. & Loan Ass'n v. Cross*, 345 Mo. 501, 134 S.W.2d 19 (1939); *In re Tamburri's Will*, 198 Misc. 809, 100 N.Y.S.2d 647 (1950); *Coble v. Coble*, 227 N.C. 547, 42 S.E.2d 898 (1947); *McGinness v. Chambers*, 3 Smith 404, 156 Tenn. 404, 1 S.W.2d 1015, 82 A.L.R. 1492 (1928); and *Matter of Estate of Miller*, 541 P.2d 28 (Wyo.1975). As the circuit court erroneously awarded Wife an elective share of Decedent's South Dakota property, we reverse the final decree in this regard.

The resolution of this first issue makes it unnecessary for us to address the Nephew's contention concerning the valuation of the elective share under Oklahoma law. Additionally, the resolution of this first issue also makes it unnecessary for us to address the issue concerning apportionment of federal estate taxes. Since Wife failed to file an election in South Dakota within the time limitations of SDCL 30–5A–6, she was not entitled to an elective share of Decedent's South Dakota property. Thus, those who receive the South Dakota property through Decedent's will, are proportionally responsible for federal estate taxes and the circuit court should reapportion the same in accordance with SDCL ch. 29–7. If the Nephews believe insufficient evidence exists for proper apportionment, they should endeavor to obtain the necessary information so as to protect their own interests.

## II.

DID THE CIRCUIT COURT PROPERLY DETERMINE THE FEES TO BE ALLOWED EXECUTOR'S ATTORNEY?

The executor, in his final account and settlement, is to be allowed all necessary expenses in the care, management, and settlement of the estate. SDCL 30–25–6. Thus, although attorney fees are a matter of contract between the executor and the attorney, *In re Johnson's Estate*, 68 S.D. 598, 603, 5 N.W.2d 38, 41 (1942), the executor is "unquestionably entitled to reimbursement for attorneys' fees for services rendered in the administration of his trust and in litigation for the benefit of the estate of his decedent, conducted in good faith and with reasonable care and pru-

---

* Under this statute, Wife was approximately three weeks late. Wife could have requested an extension before her time expired. She did not.

dence." *In re Sachs' Estate*, 68 S.D. 18, 20–21, 297 N.W. 793, 794 (1941). *See also, In re Engebretson's Estate*, 68 S.D. 572, 577, 5 N.W.2d 57, 59 (1942); and *In re Engebretson's Estate*, 68 S.D. 255, 259, 1 N.W.2d 351, 353 (1941). The fee awarded, however, must be supported by evidence in the record, and cannot be solely based on the amount estimated and listed in an inheritance tax report. *Matter of Estate of Hansen*, 366 N.W.2d 852, 855 (S.D.1985).

Whether the evidence of attorney's fees consists of some itemized statement of time or of the standard percentage charged by attorneys in probate actions, some evidence must exist to show the basis for [the attorney's] fees and to support a conclusion that the fees were reasonable for whatever time was spent or for whatever portion of the probate [the attorney] performed.

*Id.*

In the present case, the circuit court awarded the attorney for Executor, fees of $6,000 plus sales tax of $240. On appeal, the Nephews contend the reasonableness of this amount is not substantiated by the evidence, but instead is based on the amount estimated in the federal estate and state inheritance tax returns. At first blush, we would tend to agree with the Nephews. However, upon greater introspection of the record, we disagree.

■ Executor's attorney substantiated the fee by referring to the usual 3% of the estate fee and a list of extra work performed on behalf of Decedent's estate. By Findings of Fact and Conclusions of Law, the circuit court listed 43½ hours of extra probate work performed and awarded extra compensation therefor. This extra compensation amounted to less than $17 per hour. Although the fees awarded corresponded with amounts claimed in tax returns, and we admonish our circuit courts from awarding attorney fees based solely on the amounts listed in such tax returns, we cannot conclude the award is unreasonable, not substantiated in the record, or based *solely* on the amount listed in the tax

forms. We therefore affirm the $6,240 awarded as attorney fees.

III.

DID THE CIRCUIT COURT PROPERLY DETERMINE THE COMMISSION TO BE ALLOWED THE EXECUTOR?

■ When an executor's compensation is not provided in the will, or the executor renounces all claims to the compensation provided therein, the executor is to receive a commission as provided in SDCL 30–25–7. Under this statute, a sliding scale of decreasing percentages is used to determine the commission for managing the personal property of the estate. As for the commission for managing the real property of the estate, SDCL 30–25–7 provides in part: "Upon all real property accounted for by him, the executor shall receive a just and reasonable compensation for the services performed to be fixed by the court."

In the case at bar, under the sliding scale of decreasing percentages for management of personal property, the circuit court awarded Executor a commission of $300. Under the quoted provision of SDCL 30–25–7, the circuit court also awarded Executor a commission of $4,700 for managing the real property of Decedent's estate.

On appeal, the Nephews contend the circuit court erred in awarding Executor a $5,000 commission. The Nephews assert this amount was awarded so as to remain consistent with the amounts claimed as deductions on the federal estate and state inheritance tax forms. Although the Executor's commission is consistent with the amount claimed in the tax returns, the record herein does not disclose that the circuit court awarded that commission solely to be consistent with the tax forms. On the contrary, with respect to the Executor's commission, the circuit court heard substantial testimony concerning the nature, substance, and extent of the Executor's real property management activities. These activities included, but were not limited to, selection and supervision of tenants, rental collection, and property maintenance and management for well over four

years now. Although the Executor performed these identical tasks on behalf of Decedent and prior to Decedent's death, for a fee lower than the commission awarded, as an executor and fiduciary, the Executor owed a much higher degree of care and responsibility and was subjected to greater liability. The record contains adequate evidence to support the $5,000 commission, and based on this evidence, we cannot conclude the commission was erroneously awarded.

## IV.

DID THE CIRCUIT COURT ERR IN AWARDING NORMAN KUMMER A 13.31% INTEREST IN DECEDENT'S SOUTH DAKOTA PERSONAL PROPERTY?

Decedent's will bequeathed all South Dakota personal property to the Nephews. At Decedent's death, this personal property consisted of stocks, accrued dividends, and cash, and was valued at $5,327.88. Decedent's will, also devised a quarter section of Hutchinson County farmland to Norman Kummer. In the Decree of Final Distribution of Estate, however, the circuit court ordered that Norman Kummer receive the farmland—subject to Wife's elective share—and that Norman Kummer also receive a 13.31% interest in Decedent's personal property which consisted of cash.

On appeal, the Nephews contend that the circuit court erred in awarding a specific devisee of real estate a portion of the personal property, and with this contention, we agree.

Upon Decedent's death, the title to the real property devised in his will vested in the devisees, subject to the control of the circuit court and the possession of Executor during administration. *In re Estate of Kappenmann*, 82 S.D. 91, 97, 141 N.W.2d 780, 783 (1966). Thus, it is generally held that the devisees are entitled to the rent, income, and profits of the property which accrue after the decedent's death. *See* 80 Am.Jur.2d *Wills* §§ 1517, 1596 (1975); and 96 C.J.S. *Wills* § 1101

(1957). However, these rents, issues, and profits may be used to pay debts, SDCL 30–23–3, and administration expenses. 97 C.J.S. *Wills* § 1318 (1957).

In the present case, it is unclear why the circuit court awarded Norman Kummer a percentage of the estate's undistributed cash. We therefore reverse and remand for further proceedings. The Nephews are to receive Decedent's South Dakota personal property and this includes all remaining funds. If on remand, however, the Executor or Norman Kummer can establish the profits which flowed from the farmland devised to Norman Kummer, and that these profits were not used to pay debts or expenses, and that the personal property remaining at Decedent's death has not been used to pay debts or expenses, then, Norman Kummer would be entitled to the sum so established. Because the record herein is unclear as to the source of the estate's monies and how these monies have been used, we reverse and remand for proceedings consistent with the above.

Affirmed in part, reversed in part, and remanded.

FOSHEIM, C.J., and MORGAN and SABERS, JJ., concur.

WUEST, J., concurs in part and dissents in part.

WUEST, Justice (concurring in part, dissenting in part).

I concur, except for the first issue. In my opinion, we are governed by the law of Oklahoma. SDCL 30–5A–1 plainly provides, "... this state is governed by the law of the decedent's domicile at death." The interpretation of the statute by the majority may be better policy, but any change in the statute should be made by the legislature.