The WYOMING MINING ASSOCIATION, Thunder Basin Coal Company, the Carter Mining Company, a division of Exxon Coal U.S.A., Inc., Amax Coal Company, a division of Amax, Inc., Nerco Coal Corp., Cordero Mining Company, Mobil Coal Producing, Inc., Rocky Mountain Energy Company, Western Fuels Association, Inc., Petitioners,

v.

The STATE of Wyoming, State Board of Equalization and its members Shirley Wittler, Carroll Orrison and Tom Trowbridge in their official capacities; the Wyoming State Tax Commission, and the Wyoming Department of Revenue and Taxation, Respondents.

No. 87–128.

Supreme Court of Wyoming.

Jan. 12, 1988.

Marilyn S. Kite (argued), and Patrick R. Day of Holland & Hart, Cheyenne, for Wyoming Min. Ass'n, Thunder Basin Coal Co., Carter Min. Co., Amax Coal Co., Nerco Coal Corp., Cordero Min. Co., Mobil Coal Producing, Inc., and Rocky Mountain Energy Co.

D.N. Sherard (argued), of Sherard, Sherard and Johnson, Wheatland, for Western Fuels Ass'n, Inc.

David D. Uchner of Lathrop & Uchner, Cheyenne, for amicus curiae Wyoming Rural Elec. Ass'n.

Alan B. Minier of Hirst & Applegate, Cheyenne, and William L. Slover, C. Michael Loftus, John H. LeSeur, Robert D. Rosenberg, Washington, D.C., for amicus curiae Western Coal Traffic League.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard (argued), Sr. Asst. Atty. Gen., for defendants.

Kathleen A. Hunt of Smith, Stanfield & Scott, Laramie, for amicus curiae Wyoming Ass'n of Municipalities.

John V. Crow, Sublette County and Pros. Atty., and Van Graham, Deputy Sublette County and Pros. Atty., Pinedale, for amicus curiae Wyoming Ass'n of County Com'rs.

Before THOMAS, CARDINE, URBIGKIT, and MACY, JJ., and HANSCUM, D.J.

CARDINE, Justice.

Petitioners Western Fuels Association, Inc. and Wyoming Mining Association filed petitions for review and complaints for declaratory judgment in the Laramie County district court against the State of Wyoming, the State Board of Equalization, and others, challenging the action of the Board of Equalization extending the assessment of the special two percent coal severance tax for impact alleviation, § 39–6–303, W.S. 1977, through the 1987 calendar year. The actions were consolidated and certified to the Supreme Court upon motion of the parties.

Petitioners submit the issue as: Whether the special two percent coal impact tax levied by § 39–6–303, W.S.1977 expired on January 1, 1987.

The parties stipulated to the facts, which are essentially as follows. During the mid–1970's, Wyoming's coal industry was growing rapidly. To help deal with the impact caused by this growth, the legislature enacted, in §§ 39–6–301 through 39–6–307, W.S.1977, special mineral severance taxes levied against the privilege of mining coal. These statutes currently impose upon the privilege of extracting or producing coal in the state of Wyoming cumulative taxes of ten and one-half percent and are comprised of seven separate excise taxes. The revenues collected under each tax are directed into different funds. The seventh of these taxes is commonly referred to as the "coal impact tax." This special mineral severance tax, enacted by the legislature in 1975 as § 39–6–303, W.S.1977, provides:

> "(a) In addition to other taxes provided by law there is levied a severance tax upon the privilege of extracting or producing coal in the state of two percent (2%) of the value of the gross product extracted."

A limit on the total amount of tax to be collected was established.

> "(b) The tax levied in this section expires on January 1 following the year in which the cumulative taxes collected pursuant to this section total one hundred sixty million dollars ($160,000,000.00)." Section 39–6–303, supra.

The cumulative amount collected by this tax grew steadily and, by the end of 1985, over $140,000,000 had been collected. Since the tax was generating more than $20,000,000 per year, personnel with several Wyoming coal companies determined early in 1986 that the cumulative taxes accruing and owing under the coal impact tax would probably surpass the $160,000,-000 cumulative limit described in § 39–6–303(b) during the calendar year of 1986, as measured by actual production occurring during that year. This likelihood was brought to the attention of members of the Wyoming Department of Revenue and Taxation (Department) during June and July of 1986. By late summer of 1986, it was apparent that the taxes which would cause the $160,000,000 cumulative limit to be reached would be those accruing and owing for the fourth calendar quarter of 1986, as measured by production which would occur during that quarter.

Because coal impact taxes accruing and owing for the fourth calendar quarter of 1986 could, under § 39–6–304, W.S.1977, be actually paid during the first calendar quarter of 1987, the commissioner of public lands and farm loans requested advice from the attorney general's office concerning whether the expiration language of § 39–6–303(b) required that taxes exceeding the $160,000,000 limit be actually received for the tax to expire or merely that the taxes accruing and owing for 1986 would exceed the $160,000,000 limit.

In response to this request, the attorney general's office issued a memorandum opinion interpreting § 39–6–303(b) to provide that the tax would expire at such time as cumulative taxes totaling $160,000,000 were *actually* received by the State. Members of the Department advised individual Wyoming coal mining companies of the opinion and indicated that it would be adopted by the Department.

Thereafter, the coal producers contacted Representative Ron Micheli, who asked the attorney general's office whether or not the coal producers could pay some or all of the coal impact taxes owed for the final quarter of 1986 during that quarter. This had not occurred before; in the past, the coal producing companies had paid the tax on a quarterly basis on or before the due date a few months after a quarter ended. The attorney general's office responded by letter, dated September 2, 1986, stating:

"You have asked the additional question whether coal producers liable for taxes could pay enough for this calendar year to bring the amount collected up to $160,000,000. A review of the statutes pertaining to tax collection does not reveal any prohibition on the payment of taxes on 1986 production, even though payment is not due until March, 1987. It is obvious, however, that any payment might be subject to year end adjustment or reconciliation by the Revenue and Tax Department."

The coal producers then requested that the Wyoming State Tax Commission (Commission) approve a request to pay the two percent tax owed under the statute for the final quarter of 1986 during that quarter. The Commission approved this request by memorandum to the coal companies dated November 5, 1986, and forwarded forms to the coal companies to assist them in making the payments. The Commission also informed the coal producers that, for the first time, payments could be made by wire transfer.

Based on the Commission's November 5 memorandum, most of the Wyoming coal producers made payments, including partial payments, on the two percent coal impact tax in the final quarter of 1986 based on actual production during that quarter. These payments caused the cumulative total taxes collected prior to December 31, 1986 to exceed the $160,000,000 limit imposed by the statute; by December 29, 1986, the State had received and deposited a cumulative total of $164,017,573.23 paid under the coal impact tax. The Department accepted the final payments, and, in accordance with the provisions of § 39–6–305(d), W.S.1977 (Cum.Supp.1987), the state treasurer transferred all the payments received into a special "earmarked revenue fund" known as the "political subdivision capital assistance account."

In a follow-up memorandum, dated January 9, 1987, the Department, acknowledging that the tax had expired, stated:

"Thanks to the marvelous cooperation from the Wyoming Coal Industry, the Department of Revenue and Taxation has collected enough 2% Coal Impact Tax to break the $160,000,000 maximum collection limit. Since these collections were legally collected before the end of December 1986, the Department of Revenue and Taxation can follow the instructions provided for by Wyoming Statute and reduce the Mineral Severance Tax rate for coal."

However, in a later memorandum to the coal producers, dated January 14, 1987, the Department indicated that it had been informed by the attorney general's office that its previous advice "might have been somewhat premature." And in a letter dated February 17, 1987, the attorney general advised the Board of Equalization (Board) "to collect quarterly impact tax coal payments through December 31, 1987 * * *." Formal notification of the Commission's intention to continue to collect the tax through 1987 was sent in the form of a "final decision" of the Board to the coal producers on March 11, 1987. The memorandum specifically provided: "The 2% Coal Impact Tax is due on your 1987 coal production and payable quarterly as provided by W.S. 39–6–304."

In April 1987, the petitioners, as plaintiffs in two separate actions, filed petitions for review and complaints for declaratory judgment in the district court of Laramie County against the state of Wyoming, the Board and its members Shirley Wittler, Carroll Orrison and Tom Trowbridge in their official capacities, the Commission, and the Department as defendants. The petitions for review sought a judicial review and a reversal of the final administrative decision of the Board which purported to extend the two percent severance tax on

coal through 1987. The complaints sought a declaratory judgment declaring that the tax expired on January 1, 1987. The defendants answered the petitions and complaints and asserted five affirmative defenses.

Thereafter, the parties in both actions entered into a Stipulated Statement of Facts, a Stipulated Motion for Consolidation, and a Stipulated Motion for Certification to the Supreme Court. The district court ordered consolidation and certified the case to this court, in accordance with Rule 12.09, W.R.A.P. Because this court does not accept declaratory judgment actions by certification pursuant to Rule 12.-09, W.R.A.P., this case will solely address the petition for review.

Determination of this issue requires us to interpret statutes and constitutional provisions as they relate to the imposition of the coal impact tax, § 39–6–303, W.S.1977, upon Wyoming coal producing companies and the roles that the State Board of Equalization and the Department of Revenue and Taxation play in that imposition. It is this court's obligation to make sense out of a statute and give full force and effect to the legislative product. *Yeik v. Department of Revenue and Taxation*, Wyo., 595 P.2d 965 (1979).

In interpreting statutes, we look first to the language of the statute, which "must be given [its] plain and ordinary meaning unless otherwise indicated." *City of Evanston v. Robinson*, Wyo., 702 P.2d 1283, n. 4 (1985). If the statutory language is clear and unambiguous, we will not look to statutory rules of construction, nor will we attribute another meaning to the statute. *Estate of Reno*, Wyo., 604 P.2d 550 (1979).

The language to be interpreted here is that contained in § 39–6–304(a), W.S.1977, relating to the time in which quarterly coal impact tax payments are due:

"(a) Except as provided in subsection (c) of this section, each taxpayer liable for a tax under W.S. 39–6–302 or 39–6–303 shall remit quarterly tax payments to the department. The payment shall be determined by the taxpayer *based on actual production during the quarter*, val-

ues computed in accordance with subsection (b) of this section and the tax rates prescribed in this article. The quarterly tax payments are due and delinquent if not paid:

"(i) *On or before* May 15 for production during the first quarter of the current calendar year;

"(ii) *On or before* August 15 for production during the second quarter of the current calendar year;

"(iii) *On or before* November 15 for production during the third quarter of the current calendar year; and

"(iv) *On or before* March 1 for production during the fourth quarter of the preceding calendar year." (Emphasis added.)

In the interpretation of a statute levying taxes, it is the established rule not to extend its provisions, by implication, beyond the clear import of the language used or to enlarge its operations so as to embrace matters not specifically stated therein. *Kelsey v. Taft*, 72 Wyo. 210, 263 P.2d 135, 138 (1953). By the state constitution and by statute, the Department of Revenue and Taxation, through the Tax Commission and the Board of Equalization, is vested with the power and the duty to administer and supervise the tax laws of the state. Specifically, under § 39–1–303(a)(i) and (ix), W.S. 1977, the Tax Commission is given the broad authority to manage the collection, payment, and receipt of all state revenues:

"(a) In addition to the other powers and duties imposed by law, the commission shall:

"(i) Coordinate collection of state taxes * * *;

\* \* \* \* \* \*

"(ix) Prescribe standard procedures for receiving, receipting, safeguarding and periodically reporting all state revenue receipts, whether current, delinquent, penalty, interest, refunds or otherwise, and the amounts, kinds and terms of items, either collected or still outstanding, to be summarized, studied and reported."

Under § 39-1-304(a)(iv), W.S.1977 (Cum. Supp.1987), the Board of Equalization is expressly authorized to manage the internal affairs of the Board and construe tax statutes affecting the assessment, levy and collection of taxes. Section 39-1-304 provides in pertinent part:

"(a) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution * * * and review their own assessments of property and tax determinations. In addition, the board shall:

"(i) Manage its internal affairs and prescribe rules of practice and procedure;

* * * * * *

"(iv) Decide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes, in accordance with the advice and opinion of the attorney general, whose opinion and the rules, regulations, orders and instructions prescribed by the board are binding until reversed, annulled or modified by a court of competent jurisdiction."

Acting pursuant to these empowering statutes, on January 9, 1987, the Board construed §§ 39-6-303 and 39-6-304 and announced that the coal impact tax had expired as of January 1, 1987, for the logical reason that the $160,000,000 limit set by the tax had been surpassed prior to the end of 1986.

As the agency charged with the administration of the state severance tax provisions, the Board's interpretation of §§ 39-6-303 and 39-6-304, relating to how and when payments of the coal impact tax can be made and accepted, is entitled to great deference. *WYMO Fuels, Inc. v. Edwards,* Wyo., 723 P.2d 1230 (1986); *Demos v. Board of County Commissioners of Natrona County,* Wyo., 571 P.2d 980 (1977).

The State makes two arguments with respect to § 39-6-304 in support of its position that the coal impact tax did not expire on January 1, 1987. First, the State argues that the tax did not expire because the language of § 39-6-304 does not authorize or permit the partial payments of specific portions of the coal severance taxes.

Second, the State argues that the legislature never intended nor contemplated the prepayment of a portion of the coal severance tax, and thus the coal impact tax could not expire under such circumstances. We disagree.

Nothing in the language of § 39-6-304 forbids the partial payment of taxes. The acceptance of taxes in partial payments is not a substantial departure from the statute's requirements. While a taxpayer has no right to require or compel a treasurer to accept less than the entire tax owed, the treasurer may, in his discretion, accept partial payment of the tax and credit the same against the tax assessed. *State ex rel. State Tax Commission of Utah v. Evans,* 79 Utah 370, 6 P.2d 161, 84 A.L.R. 766 (1931). See also 72 Am.Jur.2d State and Local Taxation § 845 (1974). Here, the taxpayers did not require or compel the treasurer to accept partial payments of the tax. Rather, the Commission approved a suggestion of some of the coal producers that they be allowed to pay the two percent tax before the date specified in § 39-6-304. The Commission indicated that if the tax surpassed the $160,000,000 limit prior to the end of 1986, through the *voluntary* participation of the producers in the prepayment drive, the tax would expire on January 1, 1987. This discretionary act on the part of the Commission was clearly authorized by the statutes.

That partial payment is permitted by the statute is supported by § 39-6-304(d), W.S. 1977, which provides for a year-end reconciliation of the taxes either owed by or owing to the taxpayers:

"(d) On or before May 15 of each year beginning with the year 1982 based upon information received pursuant to W.S. 39-2-201, 39-2-202 and 39-6-304(a), the department shall determine the amount of the gross production returned for the preceding calendar year, shall compute the amount of tax liability and shall credit the amount paid under W.S. 39-6-304(a) and shall notify each taxpayer of the amount so determined and the balance or refund, if any, due."

If partial payments of taxes were not anticipated, the legislature would not have included in § 39–6–304(d) provision for "the balance" due the Commission. Further, a year-end reconciliation, and thus § 39–6–304(d) itself, would be unnecessary if only the exact amount of tax due was permitted to be paid on any given due date. The legislature will not be presumed to do futile things. *Yeik v. Department of Revenue and Taxation,* supra, 595 P.2d at 969. Section 39–6–304(d) was designed to permit both partial payments and overpayments as clearly indicated by its language.

Moreover, it is to the State's advantage to accept partial tax payments, for, once accepted and deposited, those early payments generate interest which otherwise would accrue to the taxpayer. In this case, the Board's decision to accept payments in November and December earned the State thousands of dollars in extra-interest income on the more than $4,000,000 collected under the prepayment plan, an advantage of the Evans rule permitting discretionary acceptance of partial tax payments.

As to the State's argument that the statute does not authorize prepayment of the tax, the language of § 39–6–304 is to the contrary. It is unnecessary to go beyond the words of the statute to find its meaning. The statute specifically provides that payments of any of the coal severance taxes resulting from production in each quarter are due *"on or before"* a specific date occurring in the middle of the next calendar quarter. This phraseology clearly indicates that the dates contained in the statutes are the *latest* dates on which the taxes can be paid for any given quarter. Thus, coal impact tax payments could be made anytime before the due date once production figures could be ascertained, including during the quarter in which the right to mine is exercised. *Council 81, American Federation of State, County and Municipal Employees, AFL–CIO v. State Department of Finance,* Del., 293 A.2d 567 (1972) (statute requiring wage payments by the State "on or before" the fifteenth of each month only set the latest date on which the salaries could be paid, not the earliest date, and permitted the payment of salaries by the state during the period in which they were earned).

Payment on or *before* the middle of the succeeding quarter is exactly what occurred here, as indicated by paragraph 12 in the stipulated statement of facts:

"[M]ost Wyoming coal producers made payments, including partial payments, on the Coal Impact Tax based *primarily on actual production during the final quarter of 1986.* With the approval of the Department of Revenue and Taxation, many of these payments were, for the first time, wire transferred to the Department. *Payments made during the fourth quarter of 1986, based on actual production information, caused the cumulative taxes received by the State under W.S. § 39–6–303 to exceed $160,000,000 by December 31, 1986."* (Emphasis added.)

The stipulated statement of facts further indicates:

"13. *By December 29, 1986, the State of Wyoming had received and deposited a cumulative total of $164,017,573.23 collected under the Coal Impact Tax.* This total, along with the amounts and dates of payments made during the final quarter of 1986, are shown on the chart attached as Exhibit 'E' prepared by the Wyoming Department of Revenue and Taxation in early January, 1987.

"14. That *the Department of Revenue accepted the payments* described in paragraph 12 and, in accordance with the provisions of Section 39–6–305(d), *the State Treasurer transferred all the payments received into the 'earmarked revenue fund' which is known and cited as the 'Political Subdivision Capital Assistance Account'."* (Emphasis added.)

█ Considering paragraphs 12, 13, and 14 of the stipulation of facts, quoted above, and applying the plain and ordinary meaning of the foregoing statutory language, it is clear that the two percent coal impact severance taxes were correctly paid, collected, accepted by the Department of Revenue, and credited to the earmarked fund,

prior to January 1, 1987. Because the cumulative amount collected under the tax exceeded $160,000,000, the only reasonable conclusion we can reach is that the two percent coal impact tax expired effective January 1, 1987, under the express statutory language of § 39–6–303(b).

The State, however, further asserts that the "special policies and practices approved by the appellees [respondents] for the remittance of coal severance taxes for the fourth quarter of 1986 were null and void without the promulgation of rules under the Wyoming Administrative Procedure Act." We disagree.

If the language of a statute which an agency is empowered to administer and enforce leaves no room for substantial debate over its meaning, an administrative rule reiterating the inevitable statutory consequence is unnecessary. *Equitable Life Mortgage and Realty Investors v. New Jersey Division of Taxation*, 151 N.J. Super. 232, 376 A.2d 966 (1977). A clear statutory direction is enforceable by an agency in accordance with its plain meaning without promulgation of a rule. *Thomson v. Wyoming In–Stream Flow Committee*, Wyo., 651 P.2d 778 (1982).

Administrative pronouncements such as interpretive rules and general statements of policy do not require the same public participation in their formulation as do substantive rules. This is so because interpretive rules and general statements of policy do not establish binding norms which are finally determinative of anyone's rights. At most, they merely repeat or emphasize an obligation already existing in a statute. *American Hospital Association v. Bowen*, 640 F.Supp. 453 (D.D.C.1986), reversed on other grounds, 834 F.2d 1037 (D.C.Cir. 1987). Even if the special procedures adopted by the commission here were considered either an "interpretative rule" or a "general statement of policy" as defined under the Wyoming Administrative Procedure Act, §§ 16–3–101 through 16–3–115, W.S.1977, they would not change the statutory provision allowing payment *before* the middle of the succeeding quarter.

We hold that under § 39–1–304(a)(iv), W.S.1977 (Cum.Supp.1987), the Board of Equalization was specifically authorized to construe the coal impact tax statute to allow payment of tax upon coal mined during the quarter when payment was made and to determine that the tax ended under the statute when taxes totaling $160,000,-000 had been received. The tax having ended January 1, 1987, all coal impact taxes paid pursuant to § 39–6–303 by petitioners after that date should be returned to petitioners.

The Board's later final decision to extend the two percent severance tax on coal through 1987 is reversed.