W.A. MONCRIEF, Jr.; and BHP Petroleum Company, Inc., a Delaware corporation, Petitioners (Petitioners),

v.

WYOMING STATE BOARD OF EQUALIZATION and its members Nancy Freudenthal, Marvin Applequist and Terry Rubald, in their official capacities in the Wyoming Department of Revenue and Taxation, Respondents (Respondents).

No. 92–228.

Supreme Court of Wyoming.

July 7, 1993.

Algirdas M. Liepas of Wiederspahn, Lummis & Liepas, P.C., Cheyenne, for M.A. Moncrief, Jr.

Robert T. McCue and William J. Thomson of Dray, Madison & Thomson, P.C., Cheyenne, for BHP Petroleum Co., Inc.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., for respondents.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

W.A. Moncrief, Jr. and BHP Petroleum Company, Inc. (Taxpayers) seek judicial review of an administrative determination rendered by the Wyoming State Board of Equalization (Board). Through an audit, the Wyoming Department of Revenue (Department) determined that the Taxpayers failed to include ad valorem tax reimbursements when valuing natural gas production for the years 1975 through 1986 for purposes of the state severance tax.[1] The Department notified the Taxpayers of the additional severance tax and demanded payment, as well as interest, from the date the unpaid tax would have been due. The Taxpayers objected to the amount of interest, claiming that interest should not have accrued until after notice and demand were issued. On appeal, the Board affirmed the Department's interest calculations. The Taxpayers now seek review of the Board's decision. We affirm.

The Taxpayers present the issue as:

Did the Board of Equalization's decision that preassessment interest accrues on severance tax deficiencies constitute a reversible error of law?

The Department and the Board frame the issue as:

---

1. Moncrief was assessed additional taxes and interest for the years 1979–1986, while BHP was assessed taxes and interest for the years of 1975–1986.

For severance tax purposes, where the taxpayer has failed to report elements of value in a self-assessment system, should interest be assessed from the date the taxes should have been paid in the first instance or from the date the taxpayer was notified of a deficiency?

## BACKGROUND AND PROCEEDINGS

The Department conducted an audit of the sales of natural gas produced from the Madden Deep Unit, located in Fremont and Natrona Counties, Wyoming.[2] Through the audit, the Department discovered that the Taxpayers, when valuing their natural gas production for purposes of the state's severance tax during the years 1975 to 1986, neglected to include the value of ad valorem tax reimbursements.[3] Based on the audit information, the Department assessed both Taxpayers additional severance tax on the value of the reimbursements and charged interest from the date the tax was originally due.[4] Both Taxpayers objected to the additional assessment and filed an appeal before the Board.

On appeal to the Board, the Taxpayers solely objected to the imposition of interest from the date the tax would have been due, arguing that interest should have accrued only from the date of notice of the additional tax. On May 19, 1992, the Board issued an order, including findings of fact and conclusions of law, which affirmed the Department's interest calculation. On June 18, 1992, the Taxpayers filed petitions for judicial review in the district court. Their individual appeals to the Board were later consolidated by stipulation and order. On October 21, 1992, the district court entered an order certifying the cases to this court.

## DISCUSSION

### STANDARD OF REVIEW

Since the Board's decision was certified to this court through W.R.A.P. 12.09, "we review the decision 'under the appellate standards applicable to a reviewing court of the first instance.' *Amax Coal v. State Bd. of Equalization*, 819 P.2d 825, 828 (Wyo.1991) (quoting *Application of Campbell County*, 731 P.2d 1174, 1175 (Wyo.1987))." *Schulthess v. Carollo*, 832 P.2d 552, 556 (Wyo.1992). The Taxpayers and the Department agree that this appeal is concerned only with a review of the Board's conclusions of law. Therefore, we must determine if the Board's conclusions are in accordance with law. *Union Pacific R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856, 860–61 (Wyo. 1990).

### STATUTORY INTERPRETATION

The Taxpayers' position is that the Board's interpretation of Wyo.Stat. § 39–6–307(c) (1985), and its predecessors, is not in accordance with law. Wyo.Stat. § 39–6–307(c), which was in effect during the pro-

---

**2.** Over the past several years, this large federal oil and gas unit has not only produced significant amounts of natural resources but it also has contributed generously to this court's case load. For an explanation of the unit agreement, the interested parties and the geography of this unit, *see BHP Petroleum Co., Inc. v. State*, 784 P.2d 621, 623 n. 3 (Wyo.1989). Other cases evolving from this oil and gas unit include: *Wyoming State Tax Com'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428 (Wyo.1993); *Moncrief v. Louisiana Land and Exploration Co.*, —— P.2d —— (Wyo.1993) (Nos. 92–23 & 92–24, decided 2/23/93) (*reh'g granted 3/16/93*); *BHP Petroleum Co., Inc. v. Okie*, 836 P.2d 873 (Wyo.1992); *Enron Oil & Gas Co. v. Department of Revenue and Taxation, State of Wyo.*, 820 P.2d 977 (Wyo. 1991); *Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021 (Wyo.1989); and *BHP Petroleum Co., Inc. v. State, Wyoming Tax Com'n*, 766 P.2d 1162 (Wyo.1989).

**3.** Tax reimbursements are paid by oil and gas purchasers who purchase the product directly from the oil and gas producer. The federal government sets a maximum price for the first sale of natural gas. The producer, however, may sell at a price above the federal maximum to cover the cost of state oil and gas taxation. Thus, a natural gas producer receives a tax reimbursement when he or she sells natural gas at a price over the federal maximum in order to recover the cost of state tax liability. *See Enron Oil & Gas Co.*, 820 P.2d at 979–80.

**4.** Moncrief's additional severance tax, as assessed on January 26, 1990, totaled $1,166,-444.00 with $909,092.00 in interest. BHP's additional severance tax, as assessed on July 22, 1988, totaled $879,057.00 with $662,049.00 in interest.

duction years of 1981 to 1986, provided that "[i]nterest at the rate of eighteen percent (18%) per annum shall be added to all *delinquent* taxes." [5] (Emphasis added.) The thrust of the Taxpayers' argument is that the additional unpaid tax discovered by the Department's audit did not become *delinquent* until after the Taxpayers were notified in 1988 and 1990 that they owed additional tax. The Taxpayers maintain that the additional tax was unassessed until the Department's audit and that their original valuations, which neglected the ad valorem reimbursements, were simply deficient. Thus, because the unpaid additional tax was merely *deficient* and not *delinquent*, then Wyo.Stat. § 39–6–307(c), and its predecessors, did not permit interest charges until after notice of the additional tax.

The Department, on the other hand, fully supports the conclusions of the Board as set out in the Board's order of May 19, 1992:

> 7. By statute, each mineral severance taxpayer has at least three obligations: (a) to fully and accurately report all production volumes; (b) to fully and accurately report all value (price) received for the mineral product at the completion of mining consistent with statutes, rules, instructions and recognized appraisal principles; and (c) to pay no less than the tax computed by the Department based upon its initial assessment. The State as well has at least three obligations: (a) to reasonably review taxpayer information received, and notify the taxpayer of any apparent errors; (b) to follow the laws, rules, instructions and recognized appraisal principles in the valuation of the product; and (c) to notify the taxpayer of the value and the tax due.

> 8. If there are unauthorized acts, errors or omissions by the taxpayer in fulfilling its obligation to report production volumes and price (value), the discovery of which by the Department may lead to a severance tax assessment, said assessment is properly characterized as a delinquent tax. * * * Any undervaluation in

this situation results in delinquent tax, thus interest accrues from the date the taxes were originally due.

When interpreting statutes, we follow an established set of guidelines. First, we determine if the statute is ambiguous or unambiguous. "A 'statute is unambiguous if its wording is such that reasonable persons are able to agree to its meaning with consistence and predictability.'" *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n*, 845 P.2d 1040, 1043 (Wyo.1993) (quoting *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 220 (Wyo.1991)). "A statute is ambiguous if its meaning is uncertain, doubtful, or if a single term can fairly be said to mean different things." *Amoco Production Co. v. State*, 751 P.2d 379, 381 (Wyo.1988). We determine whether a statute is ambiguous or not by "'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" *Parker Land and Cattle Co.*, 845 P.2d at 1042 (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)).

Although the initial fourteen words of Wyo.Stat. § 39–6–307(c) are concise and clear in their purpose, that clarity is clouded by the final two words, *"delinquent taxes."* Neither the terms *delinquent* nor *delinquent tax* are defined within the Wyoming tax statutes; therefore, we look for their plain and ordinary meaning. *Delinquent*, when used as an adjective, has primarily two meanings. First, it is said to mean "due and unpaid at the time appointed * * *." Black's Law Dictionary 428 (6th ed. 1990). *See also* Webster's Third New International Dictionary 597 (1971). Second, the term also refers to "failing in duty * * * offending by neglect or violation of duty or of law." Webster's, *supra*, at 597.

Upon careful review of the language of the severance tax statutes, which existed at the time the Taxpayers neglected to include the value of reimbursements, it is unclear whether *delinquent* was intended to en-

---

**5.** For production years 1975–1981, Wyo.Stat. § 39–6–307(c) (1977), and its predecessor, Wyo. Stat. § 39–227.8 (1975 Cum.Supp.), provided for eleven percent interest per year.

compass only one of these meanings or both. Since the original Wyoming severance tax was enacted, *delinquent* has been used in several sections.

In 1975, the statutes stated:

The tax levy provided for by W.S. 39–227.1 through 39–227.11 [Severance Tax Act], is payable to the department of revenue and taxation of Wyoming annually, on July 1, and is *delinquent* if unpaid by September 1. The amount of the tax shall be computed upon the gross production for the preceding calendar year, as described in W.S. 39–227.1:1.

Wyo.Stat. § 39–227.2 (1975 Cum.Supp.) (emphasis added).

Wyo.Stat. § 39–6–304 (1985) provided, in part:

(a) Except as provided in subsection (c) of this section, each taxpayer liable for a tax under W.S. 39–6–302 or 39–6–303 shall remit quarterly tax payments to the department. The payment shall be determined by the taxpayer based on actual production during the quarter, values computed in accordance with subsection (b) of this section and the tax rates prescribed in this article. The quarterly tax payments are due and *delinquent* if not paid:

(i) On or before May 15 for production during the first quarter of the current calendar year;

(ii) On or before August 15 for production during the second quarter of the current calendar year;

(iii) On or before November 15 for production during the third quarter of the current calendar year; and

(iv) On or before March 1 for production during the fourth quarter of the preceding calendar year.

\*   \*   \*   \*   \*   \*

(e) The balance is due and *delinquent* if not paid to the department thirty (30) days after the taxpayer receives the notice under subsection (d) of this section.

(Emphasis added.)

Based on these statutes, it is unclear whether a tax was delinquent only when unpaid at the due date or also when the taxpayer failed in its duty to properly value gross production. Thus, we find that Wyo. Stat. § 39–6–307(c), and its predecessors, are ambiguous concerning what constituted a *delinquent tax* because the term could "fairly be said to mean different things." *Amoco Production Co.*, 751 P.2d at 381.

When a statute is subject to different meanings, we " 'will resort to general principles of statutory construction in the effort to ascertain legislative intent.' " *Parker Land and Cattle Co.*, 845 P.2d at 1044 (quoting *Story v. State*, 755 P.2d 228, 231 (Wyo.1988), *cert. denied*, 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 76 (1990)). In addition, "[w]hen construing an ambiguous term in a statute, it is helpful to consider the historical setting at the time of enactment, public policy of the State, the purpose of the statute, and the mischief to be cured." *Amoco Production Co.*, 751 P.2d at 384.

Using the foregoing principles, we conclude, as did the Board, that the legislature intended *delinquent tax* to include the tax which went unpaid at the statutorily designated date for payment because the taxpayer simply neglected to pay or because the taxpayer failed in its duties as directed by the statute. Therefore, the proper construction of Wyo.Stat. § 39–6–307(c) permits the Department to charge interest on severance tax which was not paid due to a taxpayer's violation or neglect of duty.

Several firmly rooted rules of construction lend support to this interpretation. First, and foremost, we afford "great deference" to the Board, as the agency which administers the severance tax statutes, in the construction of these statutes. *Wyoming Min. Ass'n v. State*, 748 P.2d 718, 722 (Wyo.1988). Therefore, the agency's interpretation will control unless it is clearly erroneous. *Parker Land and Cattle Co.*, 845 P.2d at 1045. The Board's interpretation here was not clearly erroneous.

Second, where the legislature, by subsequent amendment or legislation in the same act or on the same subject, enacts

language which clarifies previously ambiguous language, the subsequent language gives meaning to the previously ambiguous expression. *State Bd. of Equalization v. Stanolind Oil & Gas Co.*, 54 Wyo. 521, 540, 94 P.2d 147, 153 (1939). *See also Osborne v. Consolidated Judicial Retirement System of North Carolina*, 333 N.C. 246, 424 S.E.2d 115, 117 (1993) (subsequent legislation clarifying previous legislation is an aid to statutory construction). In 1991, the Wyoming Legislature enacted Wyo. Stat. § 39–2–214(f) (1992 Cum.Supp.), which provides as follows:

Taxes are delinquent pursuant to W.S. 39–3–101(b) and 39–6–307(c) when a taxpayer or his agent knew or reasonably should have known that the total tax liability was not paid when due.

In light of this rule of construction, the subsequent enactment, defining a *delinquent tax*, clearly supports the Board's interpretation.

 Additional support for the Board's interpretation can be found when considering the mischief the statute was intended to cure and public policy. The general nature of interest is "as compensation for the use of money, or as a penalty, or it may constitute a part of the tax." 85 C.J.S. *Taxation* § 1054(c) at 638 (1954). In this instance, the interest was intended as compensation for the use of money and not as a penalty because penalties were already provided for in Wyo.Stat. § 39–6–307(a) and (b).[6] The Taxpayers' interpretation would be contrary to the purpose of this interest statute because a taxpayer who neglects to report the full value of his or her taxable product would obtain the free use of the unpaid tax money which should have been transmitted to the Department on the due date.

Public policy also supports the Board's interpretation. In its brief to this court, the Department succinctly described the most persuasive argument:

If, as suggested by [Taxpayers], all taxpayers could intentionally undervalue the mineral and make an inaccurate payment on the undervaluation for severance tax

purposes without fear of paying interest upon discovery, there would be no reason for the taxpayer to make the correct payment. In fact, from an economic standpoint, taxpayers would be foolish to make an accurate payment when they could make the correct payment in the future without any adjustment for the time value of the money. It is clearly a bonus to the taxpayers to be allowed to pay 1981 taxes with 1990 dollars.

Next, we must determine whether the Taxpayers neglected or failed in some statutory duty when they undervalued production for the tax years of 1975 through 1986. To accomplish this task, we must again look to the various statutes which controlled payment of severance tax during those years.

Since the severance tax was enacted in 1969, it has been a self-assessment system. The taxpayer has always been required to value and then report gross production, whether yearly or quarterly, for purposes of the severance tax. *See* Wyo.Sess.Laws ch. 193 § 3 (1969); Wyo.Stat. § 39–227.3 (1975 Cum.Supp.); and Wyo.Stat. § 39–6–304(a). Until 1981, the statutes required essentially:

Every person, partnership, corporation, company, firm or association of whatever nature, extracting any of the products hereinabove described shall be required to report the gross production for the preceding calendar year, together with such information as shall be requested to determine the value thereof, to the department of revenue and taxation not later than the second Monday in February in each and every year, and shall be liable for the payment of the tax assessed thereon.

Wyo.Stat. § 39–227.3.

Beginning in 1981 and running through 1986, the statutes provided, in part:

(a) Except as provided in subsection (c) of this section, each taxpayer liable for a tax under W.S. 39–6–302 or 39–6–303 shall remit quarterly tax payments to the department. The payment shall be de-

6. Wyo.Stat. § 39–227.8 also provided for penal-    ties.

termined by the taxpayer based on actual production during the quarter, values computed in accordance with subsection (b) of this section and the tax rates prescribed in this article.  \* \* \*

\*      \*      \*      \*      \*      \*

(b) On or before April 1 of each year the board shall furnish each known taxpayer under this article a basis for computing the value of his product as prescribed in W.S 39–2–202 and 39–6–301. The department may revise a basis as necessary and shall furnish the revised basis to each known taxpayer. A taxpayer shall not use less than the most recent basis furnished under this subsection in computing his quarterly payments.

Wyo.Stat. § 39–6–304.

■ We agree with the Board's conclusion that the Taxpayers' failure to include the value of ad valorem tax reimbursements in their required quarterly or yearly computations caused the tax to be delinquent as contemplated by Wyo.Stat. § 39–6–307(c), and its predecessors. As we said in *Enron Oil & Gas Co. v. Department of Revenue and Taxation, State of Wyo.*, 820 P.2d 977, 982 (Wyo.1991):

> [I]t is evident that the value of the gas to purchasers is not just the price of the gas itself. Purchasers, at least in the instances that are at issue here, are clearly willing to pay not only the maximum price permitted by the NGPA [Natural Gas Policy Act[7]], but also a price enhanced by the reimbursements of both the severance and ad valorem taxes assessed by the State of Wyoming.

We reaffirm this statement and specifically conclude that the Taxpayers' neglect of ad valorem tax reimbursements in computing the value of gross production was a failure to perform their duty under the law. Therefore, the unpaid tax was delinquent.

In reaching this conclusion, we are mindful of the exhibits presented by the Department which demonstrate that, over the years, documents were provided to the Taxpayers which instructed the Taxpayers to include tax reimbursements as part of value. In fact, from 1981 forward, the Department furnished each Taxpayer with the Wyo.Stat. § 39–6–304(b) basis explaining what to include for quarterly tax payment calculation. Those documents clearly expressed that "tax reimbursements" were to be included. In addition, on forms used by the Department and provided to the Taxpayers before 1981, it was clearly printed that: (1) the value of gross production included "100% of proceeds" received by the producers, and (2) gross sales included tax reimbursements. If a purchaser paid a producer a price which exceeded the federal maximum due to ad valorem tax reimbursements, then the value of the reimbursements represents a portion of "100% of proceeds."

The Taxpayers make several additional arguments in support of their position that the Board's decision was not in accordance with law. Each of these additional arguments rely on a single key premise—that the additional tax was not assessed until after the Department's discovery. Because we find this premise to be incorrect, each of these arguments fail.

■ The Taxpayers correctly assert the proposition that assessment is an essential step in the taxing process. 3 Thomas M. Cooley, *The Law of Taxation*, § 1045 at 2116 (1924). The Taxpayers, however, fail to recognize that "no assessment is necessary where the statute itself prescribes the amount to be paid \* \* \*." *Id.* at 2118. *See also Morrison–Knudson Co. v. State Board of Equalization*, 58 Wyo. 500, 528–29, 135 P.2d 927, 938 (1943) (with certain taxes, the statute itself makes the assessment and the taxing authority need not make any further assessment).

■ In this case, the severance tax statutes and the actions of the Department accomplished the necessary assessment and left the Taxpayers without discretion. The Taxpayers were apprised that tax was due on the tax reimbursements and the amount due because: (1) the statutes required the Taxpayers to value and report

---

**7.** 15 U.S.C. §§ 3301 et seq. (1982) (federal stat-   utes regulating the natural gas industry).

gross production and expressly provided the percent to be paid on that value, and (2) the Department explained to each Taxpayer the proper method of valuing gross production. The following words of Justice Blume describe our position:

Presumably, the taxpayer knows as well as, or better than, the State Board of Equalization, what taxes are due. The statute itself makes the assessment, and none is made or required to be made by the Board except in cases in which the taxpayer is delinquent in his duties.

*Morrison–Knudson Co.*, 58 Wyo. at 528–29, 135 P.2d at 938. Hence, because tax on the value of ad valorem tax reimbursements was expressly assessed through the severance tax statutes, all of the Taxpayers' arguments, which rely on the premise that the additional tax was unassessed until after the audit, must fail.

## DISPOSITION

To conclude, we affirm the Board's order because: (1) its interpretation of the meaning of *delinquent taxes* was in accordance with law; (2) the Taxpayers' undervaluation of their gross product was a neglect of their duty and resulted in a delinquent tax; and (3) the Department acted within the law when it imposed interest under Wyo. Stat. § 39–6–307(c) and predecessor statutes.